UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NORMAN JENKINS,                                     COMPLAINT

              Plaintiff,                              Index No.

    -against-                                         JURY TRIAL DEMANDED

NEW YORK CITY POLICE DEPARTMENT
("NYPD") OFFICER VICTOR CHARLES,
Shield No. 06096; NYPD OFFICER RAMIRO
RUIZ ,Shield No. 7987; NYPD OFFICER
ROBERT AGATE, Shield No. 8923; and
JOHN AND JANE DOES NOS. 1-5,

              Defendants.
------------------------------------------------------------x

Plaintiff NORMAN JENKINS, by his attorneys, ROBERT J. BOYLE and GIDEON ORION OLIVER, as and for his complaint against defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages, and attorneys' fees pursuant to 42 USC §§ 1983 and 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States of America.

### JURISDICTION AND VENUE

2. This action is brought pursuant to 42 USC §§ 1983 and 1988 and the First, Fourth,and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

4.	Venue is properly laid in the Southern District of New York under 28 USC § 1391(b) in that this is the District in which the claims arose.

## JURY DEMAND

5.	Plaintiff demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.	Plaintiff NORMAN JENKINS is an African-American male, a citizen of the United States, and at all relevant times a resident of the City and State of New York.

7.	At all times relevant herein, defendants were duly sworn police officers of the New York City Police Department ("NYPD") and were acting under the supervision of said department and according to their official duties.

8.	At all times relevant herein, Defendant VICTOR CHARLES, Shield No. 06096, was employed as and acting as an NYPD Officer.

9.	At all times relevant herein, Defendant RAMIRO RUIZ, Shield No. 7987, was was employed as and acting as an NYPD Officer.

10.	At all times relevant herein, Defendant ROBERT AGATE, Shield No. 8923, was was employed as and acting as an NYPD Officer.

11.	At all times relevant herein, defendants JOHN AND JANE DOES NOS. 1-5 were was employed as and acting as NYPD Officers and/or supervisors.

12. At all times relevant herein, defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

13. Each and all of the acts of defendants alleged herein were done by said defendants while acting within the scope of and in furtherance of their employment by the City of New York.

14. Defendants were each and all personally involved in depriving plaintiffs of their rights and in implementing the unconstitutional policies, practices, customs and/or conduct complained of herein, as set forth more fully below.

15. At all times relevant herein, as set forth more fully below, defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

16. Each individual defendant is sued in her or his individual and official capacities.

## **FACTS**

17. On May 22, 2010, at around 2:30AM, Mr. Jenkins was present in the vicinity of New York City Housing Authority ("NYCHA") housing projects near 230 East 102nd Street in the County of New York and State of New York.

18. Mr. Jenkins grew up in the neighborhood near 230 East 102nd Street.

19. Mr. Jenkins' girlfriend, who was 9 months pregnant with his child, lived in the neighborhood near 230 East 102nd Street on May 22, 2010.

20. Mr. Jenkins' 28-year-old daughter also lived near 230 East 102nd Street on May 22, 2010.

21. On May 21, 2012, Mr. Jenkins was with his pregnant girlfriend.

22. After being with his pregnant girlfriend, Mr. Jenkins visited his daughter and was her invited guest at her residence at 230 East 102nd Street.

23. On May 22, 2010, near 230 East 102nd Street, at around 2:30AM, shortly after Mr. Jenkins left his daughter's apartment building, the defendants approached Mr. Jenkins.

24. One or more of the defendants struck Mr. Jenkins in the back of his head, causing him to fall down to the ground.

25. The defendants beat Mr. Jenkins as he was on the ground.

26. The defendants went into Mr. Jenkins' pockets as he was on the ground and took $250.00 from him.

27. The defendants continued to beat and strike Mr. Jenkins until a marked NYPD vehicle arrived in the area.

28. Mr. Jenkins was subsequently brought to an NYPD precinct for arrest processing.

29. At the precinct, a JOHN DOE Sergeant noticed Mr. Jenkins' head bleeding and said words to the effect of "if you say someone else beat you up we will let it go."

30. Mr. Jenkins was eventually treated at Bellevue for the serious injuries defendants' beating caused him.

31. Among other injuries, Mr. Jenkins experienced severe blunt trauma to the back of his head that resulted in a concussion, headache, dizziness, and changes to his vision; abrasions and puncture wounds on his arms, including a puncture wound on his left forearm that later

became infected; injuries to his left shoulder; and injuries to his left eye that caused bleeding from his eye on the date of the incident and caused him to lose vision quality in his left eye.

32. After Mr. Jenkins was medically cleared for arraignment, Mr. Jenkins was arraigned before a New York City Criminal Court judge.

33. At Mr. Jenkins' arraignment, he was charged with three counts of felony assault, one count of resisting arrest, one count of criminal possession of a controlled substance in the fifth degree, one count of criminal possession of marijuana, and one count of criminal trespass.

34. At Mr. Jenkins' arraignment, the Court asked what the "predicate" for the stop was and asked "How did this all start?"

35. In response, the prosecutor represented: "[I]t appears the officers approached the defendant, asking if he lived in New York City Housing – this was a project and the officers asked defendant for identification at which point defendant pushed one of the officers; a struggle ensued. . . . It appears in the struggle, multiple officers fell to the floor, the defendant hit his head and was RMA [requesting medical assistance]".

36. Mr. Jenkins' counsel made a record at arraignment of the "open and wet and swollen wound" to the back of Mr. Jenkins' head and her concern that he had suffered a concussion; a "defensive wound which goes through his sweatshirt to his left forearm"; "neck scratches to his throat"; and that his "left eye is bloodshot."

37. The Court set bail in Mr. Jenkins' case and as a result Mr. Jenkins remained incarcerated.

38. On May 24, 2010, Mr. Jenkins' child was born.

39. Several months later, Mr. Jenkins' parole was revoked on a curfew violation in connection with his arrest and prosecution in this matter.

40. On or about June 1, 2011, after repeated court appearances, the criminal proceeding against Mr. Jenkins arising from his May 22, 20110 arrest was dismissed on speedy trial grounds.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

41. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

42. As a result of defendants' conduct as described above, plaintiff was subjected to illegal, improper, and false arrest by defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

43. The level of force employed by defendants was objectively unreasonable and in violation of plaintiff's constitutional rights.

44. Defendants issued legal process to place plaintiff under arrest.

45. Defendants arrested plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

46. Defendants acted with intent to do harm to plaintiff without excuse or justification.

47. Defendants misrepresented and falsified evidence before the District Attorney of New York County ("DANY").

48. Defendants did not make a complete and full statement of facts to DANY.

49. Defendants withheld exculpatory evidence from DANY.

6

50. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

51. Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

52. Defendants acted with malice in initiating criminal proceedings against plaintiff.

53. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

54. Defendants lacked probable cause to continue criminal proceedings against plaintiff.

55. Defendants acted with malice in continuing criminal proceedings against plaintiff.

56. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

57. Notwithstanding defendants' misconduct, the criminal proceedings against plaintiff were favorably terminated on the merits.

58. Defendants created false information against plaintiff.

59. Defendants forwarded false information to prosecutors in DANY.

60. Defendants misled the prosecutors and/or the Court by providing false information and/or testimony in initiating and throughout the criminal proceedings.

61. Defendants failed to turn over exculpatory evidence and other materials to the prosecutor despite proper demands and/or requests for the same.

62. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person, including the excessive use of force; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which plaintiff was aware and did not consent; (d) freedom from the lodging of false charges against him by police officers; (e) freedom from having police officers fabricate evidence against him; (f) freedom from malicious prosecution by police, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in plaintiff's favor; (g) freedom from retaliatory prosecution; (h) freedom from abuse of process; (i) freedom from deprivation of liberty without due process of law; and (j) the enjoyment of equal protection, privileges and immunities under the laws.

63. As a result of the foregoing, plaintiff was deprived of his liberty and property and First Amendment rights, suffered bodily injury, pain and suffering, psychological and emotional injury, humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM
## SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983

64. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

65. By failing to remedy the wrongs committed by his or her subordinates, in failing to properly train, screen, supervise, or discipline his or her subordinates, and by personally participating in the constitutional injuries set forth above, SUPERVISORY OFFICER RICHARD ROE caused damage and injury in violation of plaintiff's rights guaranteed under the United States Constitution, including its First, Fourth, and Fourteenth Amendments, through 42 U.S.C. §1983.

66. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**WHEREFORE**, plaintiff demands judgment against the defendants individually, jointly, and severally, and prays for relief as follows:

a. Compensation for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

b. An award of punitive damages against the individual defendants; and

c. Attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

DATED:   New York, New York
         May 20, 2013

                                        Respectfully submitted,

                                        ROBERT J. BOYLE


                                        _____/S/_____
                                        Robert J. Boyle (RB3568)
                                        351 Broadway 3rd floor
                                        New York, N.Y. 10013
                                        212-431-0229

9

GIDEON ORION OLIVER

_____/S/_____
Gideon Orion Oliver (GO 8799)
299 Broadway, Suite 806
New York, New York 10007
(212) 766-8050