```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                        :   USDC SDNY
                                                        :   DOCUMENT
NORMAN JENKINS,                                         :   ELECTRONICALLY FILED
                                                        :   DOC #: _____
                                                        :   DATE FILED: August 6, 2015
                                Plaintiff,              :
                                                        :
                     v.                                 :   13 Civ. 3405 (KPF)
                                                        :
NEW YORK CITY POLICE DEPARTMENT                         :   OPINION AND ORDER
OFFICER VICTOR CHARLES, et al.,                         :
                                                        :
                                Defendants.             :
                                                        :
------------------------------------------------------- X
```

KATHERINE POLK FAILLA, District Judge:

Plaintiff brought suit under 42 U.S.C. § 1983 against three officers (the "Officers" or "Defendants") of the New York City Police Department (the "NYPD"),[1] alleging false arrest, excessive force, and malicious prosecution stemming from his May 22, 2010 arrest. Defendants move for partial summary judgment, arguing that liability for false arrest should be cut off once there emerged probable cause that Plaintiff was in violation of his parole conditions, and that the revocation of Plaintiff's parole following his arrest precludes his malicious prosecution claim. Defendants additionally move to preclude the

---

[1] Plaintiff also named in his Complaint "John Does 1-5," yet made no attempt to identify these John Does or oppose Defendants' request that they be removed from the case and the caption. (See Compl.; Def. Br. 1 n.1). The docket also erroneously lists the NYPD as a separate Defendant. The Complaint does not name the NYPD as a separate Defendant, and in any case any claims against the NYPD could not proceed because a New York City agency is not an entity that can be sued. N.Y. City Charter ch. 17 § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); see Brewton v. City of New York, 550 F. Supp. 2d 355, 368 (E.D.N.Y. 2008); Echevarria v. Dep't of Corr. Servs., 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999). Accordingly, John Does 1-5 are dismissed from the action, and the Clerk of Court is directed to remove them and the NYPD from the docket.

testimony of Plaintiff's medical expert under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  For the reasons set forth in this Opinion, Defendants' motion is denied.

## BACKGROUND[2]

### A.     Factual Background

In the early morning of May 22, 2010, at around 2:30 a.m., Plaintiff was walking on East 102nd Street between Second and Third Avenues in Manhattan.  (Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2).  Plaintiff was on parole, as a condition of which he was required to be at his residence between 9:00 p.m. and 7:00 a.m.  (Def. 56.1 ¶¶ 3-4; Pl. 56.1 ¶¶ 3-4).[3]  Defendants, on patrol in the 23rd Precinct, observed Plaintiff and decided to approach him.  (Def. 56.1 ¶¶ 5, 7).  According to Defendants, this was based on Plaintiff's wearing an

---

[2]   The facts set forth herein are drawn from Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1"); the Declaration of Brian J. Farrar in Support of Defendants' Motion for Summary Judgment ("Farrar Decl.") and the exhibits attached thereto; Plaintiff's Counter-Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. 56.1"); and the deposition testimony of various witnesses ("[Name] Dep.").  For convenience, Defendants' opening brief is referred to as "Def. Br.," Plaintiff's opposition brief as "Pl. Opp.," Defendants' reply brief as "Def. Reply," and Plaintiff's sur-reply as "Pl. Sur-Reply."

Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein.  Where facts stated in a party's Rule 56.1 Statement are supported by testimonial or documentary evidence, and denied with only a conclusory statement by the other party, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c)-(d).

[3]   Plaintiff states in his 56.1 Statement that he had verbal permission from his parole officer to be out after his curfew if the need arose to take care of his girlfriend, who at the time was pregnant with his son. (Pl. 56.1 ¶¶ 4 (citing the testimony of Plaintiff and his parole officer at the parole revocation hearing), 23-24).  The parties do not discuss whether such verbal permission can modify or supersede the written terms of Plaintiff's parole.  (*See* Farrar Decl. Ex. D).  The effect of such permission is not relevant here, however.  Probable cause is based upon the information known to the officers at the time, and Plaintiff nowhere alleges that he told Defendants at any time that the terms of his parole had been modified; rather, Plaintiff maintains that he never told Defendants that he was on parole.  (Pl. 56.1 ¶¶ 14, 17).

2

unseasonably warm coat and attempting to avoid the officers by walking quickly and not making eye contact.  (*Id.* at ¶ 6).  Plaintiff disputes Defendants' characterization of his demeanor, movement, and raiment, stating that he was moving normally and wearing a cotton jacket appropriate to the temperature of 59-60 degrees.  (Pl. 56.1 ¶ 6).

The parties also dispute what transpired after Defendant Ruiz approached Plaintiff.  Defendants maintain that Plaintiff quickly became "aggressive" and "combative" in response to simple questions, and then initiated a physical altercation.  (Def. 56.1 ¶¶ 7-12).  Plaintiff counters that Defendants struck him on the head from behind with no warning or prior conversation, and then continued to strike him.  (Pl. 56.1 ¶¶ 7-12).  Defendants Ruiz and Charles state as well that Plaintiff told them he was on parole during their interaction on 102nd Street, while Plaintiff denies that any conversation transpired.  (Def. 56.1 ¶¶ 14-15; Pl. 56.1 ¶¶ 14-15).  Defendants also state that they recovered forty-one bags of cocaine and one bag of marijuana from Plaintiff, which he denies.  (Def. 56.1 ¶ 13; Pl. 56.1 ¶ 13).  Defendant Charles testified that, once Defendants brought Plaintiff back to the precinct house, Charles confirmed via warrant check that Plaintiff was on parole, a statement that Plaintiff lacks the information to acknowledge or contest.  (Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16).  Plaintiff testified, however, that Defendants Ruiz and Agate brought him a phone at the precinct and told him to call his parole officer.  (Def. 56.1 ¶ 18).

Plaintiff was charged with assault on a police officer, resisting arrest, criminal possession of a controlled substance in the fifth degree, and unlawful possession of marijuana. (Def. 56.1 ¶ 12). Plaintiff's criminal case was adjourned multiple times without being presented to a grand jury, and was ultimately dismissed on motion of the District Attorney on June 1, 2011. (Pl. 56.1 ¶¶ 32, 37, 41-45).

Meanwhile on May 24, 2010, a parole warrant (the "Parole Warrant") was issued for the purpose of revoking Plaintiff's parole status. (Def. 56.1 ¶ 19). The Parole Warrant identified four grounds for revocation: Plaintiff's assault of Defendants, possession of controlled substances, resisting arrest, and violation of his curfew. (Boyle Decl. Ex. 7). On August 20, 2010, a Final Parole Revocation Hearing was held. (Def. 56.1 ¶ 20). The Administrative Law Judge (the "ALJ") found that Plaintiff was in violation of his 9:00 p.m. curfew at the time of his arrest, but due to Plaintiff's previous compliance and the circumstances of the arrest recommended a "revoke and restore" by which Plaintiff would be returned to parole status. (Pl. 56.1 ¶ 38; Farrar Decl. Ex. L). On September 2, 2010, the Parole Violation Unit modified the ALJ's decision, instead imposing a 12-month hold by which Plaintiff was to be returned to prison until May 25, 2011. (Pl. 56.1 ¶ 39; Farrar Decl. Ex. K). Plaintiff appealed this determination, and the Administrative Appeal Unit of the Division of Parole found that the Parole Violation Unit had not given any explanation for its modification of the ALJ's decision; accordingly, the Appeal Unit determined that Plaintiff should be given a revoke and restore with time served. (Pl. 56.1

4

¶¶ 40, 43; Farrar Decl. Ex. K).  Plaintiff was released from custody on May 6, 2011, and returned to parole supervision.  (Def. 56.1 ¶ 21).

## B. Procedural Background

Plaintiff filed his complaint on May 20, 2013, bringing claims for false arrest, excessive force, and malicious prosecution under 42 U.S.C. § 1983. (Dkt. #1).  On September 24, 2014, Defendants moved for partial summary judgment, seeking to dismiss Plaintiff's false arrest and malicious prosecution claims.  (Dkt. #37-40).  Plaintiff filed his opposition brief on October 24, 2014 (Dkt. #41-44), and Defendants filed their reply brief on November 6, 2014 (Dkt. #46).  Because Defendants' reply brief raised new arguments, the Court granted Plaintiff's request to file a sur-reply (Dkt. #50), and the briefing was complete with the filing of Plaintiff's sur-reply on December 8, 2014 (Dkt. #53).

## DISCUSSION

## A. The Standard for Summary Judgment Motions

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may discharge this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the non-moving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material

fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher* v. *Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotation marks and citations omitted).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). However, in considering "what may reasonably be inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

**B.   Analysis**

   **1.   The Court Denies Summary Judgment as to Plaintiff's False Arrest Claim**

A claim for false arrest under Section 1983 is rooted in the Fourth Amendment, which provides an individual with the right to not be arrested without probable cause. *Weyant* v. *Okst,* 101 F.3d 845, 852 (2d Cir. 1996) ("A § 1983 claim for false arrest[] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause[.]"). In consequence, a claim for false arrest cannot be established when the arresting officer had probable cause to make the arrest. *Singer* v. *Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no

7

federal civil rights claim for false arrest where the arresting officer had probable cause."); *see also Fulton* v. *Robinson,* 289 F.3d 188, 195 (2d Cir. 2002) ("A § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest."). When determining whether probable cause to arrest exists, a court "must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth* v. *Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996). Yet probable cause is objective, not subjective: "[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly* v. *Couch,* 439 F.3d 149, 154 (2d Cir. 2006).

  Defendants argue for summary judgment as to Plaintiff's false arrest claim on the ground that Defendants became aware of Plaintiff's parole status at some point during his arrest or at the precinct house, and accordingly had probable cause to arrest him at that point. The Second Circuit has analyzed arrests for parole violations in New York at length and concluded that, while New York State procedural law does not allow an arrest for violation of parole, the Fourth Amendment is not violated where an arresting officer has probable cause to believe an arrestee is in violation of his parole. *United States* v. *Bernacet,* 724 F.3d 269, 275-79 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 806 (2013); *accord United States* v. *Singletary,* — F.3d —, No. 14-3243-cr, 2015 WL

8

4222108, at *6 (2d Cir. July 14, 2015) ("[C]onstitutional reasonableness does not demand that a seizure comport with *state* procedural law." (citing *Bernacet*, 724 F.3d at 277) (emphasis in *Singletary*)).  Moreover, an arresting officer need not know the terms of a plaintiff's parole to effect an arrest at a time such as 2:30 a.m.; it is enough to know that that a 9:00 p.m. curfew is a customary condition of parole.  *Bernacet*, 724 F.3d at 274-75.

Yet Defendants are unable to show that no material issues of fact remain with regard to *when* Defendants had probable cause to believe that Plaintiff was in violation of his parole.  Defendants Ruiz and Charles testified that Plaintiff told them he was on parole during the arrest on 102nd Street, while Plaintiff testified that he never spoke to the Officers during the arrest.  (Def. 56.1 ¶¶ 14-15; Pl. 56.1 ¶¶ 14-15).  Defendants accordingly concede that "an issue of fact remains as to whether plaintiff told the officers during the initial encounter on the street that he was on parole."  (Def. Reply 2).

Defendants are correct that "it is not disputed that at some point that night … it was learned that plaintiff was on parole."  (Def. Reply 2).  Plaintiff testified that he was told by Defendants Ruiz and Agate to call his parole officer.  (Def. 56.1 ¶ 18; Pl. 56.1 ¶ 18).  Defendant Charles also testified that he had previously run a warrant check (Def. 56.1 ¶ 16), a statement that Defendants have not offered additional evidence to support and Plaintiff lacks the ability to verify.  The precise timing of Defendants' acquisition of probable

cause may be relevant to damages,[4] but where an issue of material fact remains as to whether probable cause existed at the time of arrest, summary judgment cannot be granted. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck* v. *Alford*, 543 U.S. 146, 152 (2004). "It is, therefore, axiomatic that subsequently discovered evidence cannot be used to cure an arrest that was made without probable cause." *Mejia* v. *City of New York*, 119 F. Supp. 2d 232, 253 (E.D.N.Y. 2000). Accordingly, Defendants' motion for summary judgment on Plaintiff's false arrest claim must be denied.

### 2. The Court Denies Summary Judgment as to Plaintiff's Malicious Prosecution Claim

A plaintiff bringing a claim for malicious prosecution under New York law must satisfy four elements: "[i] that Defendants either commenced or continued a criminal proceeding against him, [ii] that the proceeding terminated in his favor, [iii] that there was no probable cause for the criminal proceeding, and [iv] that the criminal proceeding was instituted with actual malice." *Bermudez* v. *City of New York*, 790 F.3d 368, No. 14-1125-cv, 2015 WL 3650756, at *6

---

[4] The Second Circuit, in *Townes* v. *City of New York*, found that a Section 1983 plaintiff could not recover damages for an arrest supported by probable cause even where the initial stop was unlawful, but found that the plaintiff "may have been entitled" to damages stemming from "the brief invasion of privacy related to the seizure and initial search of his person." 176 F.3d 138, 149 (2d Cir. 1999). Courts considering *Townes* have since found that plaintiffs may recover damages from a false arrest subsequently supported by probable cause, where such damages are limited to the period between the arrest and the acquisition of probable cause. *Morgan* v. *City of New York*, No. 12 Civ. 704 (WFK), 2014 WL 3407714, at *4 (E.D.N.Y. July 10, 2014); *Lust* v. *Joyce*, No. 05 Civ. 613 (GLS)(RFT), 2007 WL 3353214, at *2 (N.D.N.Y. Nov. 9, 2007).

(2d Cir. June 15, 2015). "While police officers do not generally 'commence or continue' criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.'" *Id.* (quoting *Manganiello* v. *City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (alteration in *Manganiello*)).

    The parties' positions concerning Plaintiff's malicious prosecution claim have, to put it gently, evolved over the course of the briefing; for this reason, the Court focuses on the arguments contained in each side's reply submissions, which contain the most complete articulation of their positions. Defendants do not contest that Plaintiff has at least raised a disputed issue of material fact with regard to each of the elements of a malicious prosecution claim when considering Plaintiff's criminal prosecution — which, it bears noting, was terminated some thirteen months after his arrest. Yet the parallel revocation of Plaintiff's parole for eleven months plays a confounding role. Plaintiff argues that Defendants' initiation of the criminal prosecution caused a separate set of damages stemming from the concurrent decision to revoke his parole, which revocation he argues was proximately caused by the prosecution; thus, the evolution of his parole revocation sentence from revoke and restore, to twelve-month hold, to revoke and restore with time served, gives rise to damages for the period of his incarceration due to his parole revocation. For Defendants, meanwhile, the independent decision to revoke Plaintiff's parole

11

means that he cannot have suffered any deprivation of liberty directly caused by the criminal prosecution itself.  The Court addresses each argument in turn.

In the handful of cases in which plaintiffs have pressed similar theories — a malicious criminal prosecution resulting in a deprivation of liberty via a separate revocation of parole — courts have struggled with whether the requirement of favorable termination applies to the criminal prosecution alone, or to both the criminal prosecution and the revocation of parole.  The requirement of favorable termination stems from *Heck* v. *Humphrey*, 512 U.S. 477 (1994), which held that "a prisoner ... has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus."  *Id.* at 489.  Yet the Second Circuit, carefully parsing the concurrences and dissent in *Spencer* v. *Kemna*, 523 U.S. 1 (1998), has endorsed Justice Souter's position that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."  *Id.* at 21 (Souter, J., concurring).  *See Huang* v. *Johnson*, 251 F.3d 65, 74-75 (2d Cir. 2001); *Farrell* v. *Burke*, No. 97 Civ. 5708 (DAB), 2004 WL 2813175, at *5 (S.D.N.Y. Dec. 8, 2004) ("That a majority of the Supreme Court justices have stated positions limiting the reach of *Heck* and allowing Section 1983 actions by former prisoners who are no longer in custody, has been acknowledged by the Second Circuit and district courts within this Circuit." (collecting cases)), *aff'd*, 449 F.3d 470 (2d Cir. 2006).

Following *Huang*, at least one court in this District has found that a plaintiff must prove the favorable termination of the parole revocation as well to press a malicious prosecution. *Dallas* v. *Goldberg*, No. 95 Civ. 9076 (LTS), 2002 WL 1013291, at *11-12 (S.D.N.Y. May 20, 2002). Yet *Dallas* is distinguishable in two important respects from the instant case: First, the *Dallas* plaintiff had already "sought, unsuccessfully, to attack directly the parole revocation decision through administrative channels and to challenge collaterally the revocation through state habeas corpus." *Id.* at *2. The *Dallas* plaintiff thus had his bite at the apple via habeas corpus; to allow him to relitigate the validity of his conviction through Section 1983 would raise precisely the specter that *Heck* was designed to forestall. Second, the plaintiff pleaded guilty to two of the three charges at the final parole revocation hearing in *Dallas*, which was held after his criminal charges had already been dismissed; there was thus far less to demonstrate a causal connection between the prosecution of the criminal charges and the revocation of his parole than in the instant case.

In a case more squarely on point, another court in this District found that a plaintiff whose parole was revoked while criminal charges were pending could bring a Section 1983 claim where he had been conditionally released from his parole revocation before having an opportunity to fully pursue his administrative or habeas remedies. *Hernandez* v. *Wells*, No. 01 Civ. 4376 (MBM), 2003 WL 22771982, at *4 (S.D.N.Y. Nov. 24, 2003).

Neither court squarely addressed the question before this Court: whether a claim for malicious prosecution can proceed when the favorable termination requirement is met only as to the criminal prosecution, and the parole revocation forms merely the basis of damages.  This Court takes the position that nothing intrinsic to a malicious prosecution claim bars liability for the natural and foreseeable deprivations of liberty proximately caused by that malicious prosecution.  Yet the requirement of proximate cause inherently incorporates *Heck*'s favorable termination requirement, as well as *Huang*'s exception: Where a plaintiff's parole revocation is determined to be valid independent of the criminal charges, that plaintiff cannot establish the requisite causal link between the prosecution and the parole revocation.  Meanwhile, where a plaintiff's parole revocation has been favorably terminated, or where a plaintiff has been released from custody without a satisfactory opportunity to challenge the validity of that revocation, the plaintiff may press the argument that the incarceration due to the parole revocation was proximately caused by the criminal prosecution.  Applying this rubric to the instant case, Plaintiff was released before having an opportunity to challenge via habeas corpus the legitimacy of his eleven-month confinement for parole revocation.  Accordingly, such confinement has not been confirmed to be valid, and Plaintiff is accordingly entitled to press a theory attributing the confinement to his criminal prosecution.

Defendants alternatively argue, in their reply brief, that Plaintiff cannot establish a causal chain between their conduct and the Parole Board's decision

to revoke Plaintiff's parole.  (Def. Reply 5-6).  "It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment."  *Townes* v. *City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).  Yet *Townes* contains an important exception: "At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment."  *Id.*  The Second Circuit has subsequently elaborated on this exception to *Townes*'s independent judgment rule, noting the "tension" between "the principle that the intervening exercise of independent judgment will break a causal chain and the principle that defendants in section 1983 cases are liable for consequences caused by reasonably foreseeable intervening forces."  *Zahrey* v. *Coffey*, 221 F.3d 342, 351 (2d Cir. 2000) (internal quotation marks and citations omitted).

Resolving all factual ambiguities in Plaintiff's favor, the Court cannot conclude as a matter of law that Plaintiff's eleven-month incarceration for violation of his parole was not proximately caused by Defendants' conduct.  The Court notes two factors compelling this conclusion.  First, the Parole Warrant was issued based upon the criminal charges brought against Plaintiff — assault, resisting arrest, criminal trespass, and possession of marijuana (*see* Boyle Decl. Ex. 7) — which charges were themselves based upon Defendant Charles's statement (*see* Farrar Decl. Ex. H); a parole warrant may thus never have issued absent the allegedly false statements of the Officers.  Second, the ALJ, considering merely the violation of curfew, found the

15

appropriate remedy to be a revoke and restore, a finding affirmed by the Appeal Unit; the only actor to find a term of incarceration appropriate, the Parole Violation Unit, did not offer an explanation for its decision, raising the possibility that it acted in part based upon the criminal charges brought and the charges initially brought to the ALJ, but subsequently dropped.  (*See* Farrar Decl. Ex. K, L; Boyle Decl. Ex. 5).

The case is thus quite similar to *Hernandez*, in which the district court found that "[a] reasonable jury could conclude that Hernandez's incarceration resulted from Wells' claim that Hernandez punched him; if Hernandez had not been arrested and charged with assault, his parole may not have been revoked based on the alleged assault." 2003 WL 22771982, at *11.  Accepting, as it must at this procedural stage, that Defendants fabricated the statements underlying both the criminal charge and the charges originally presented to the Parole Board, the Court cannot conclude as a matter of law that such fabrication did not proximately cause the revocation of Plaintiff's parole.  Accordingly, the motion for summary judgment as to Plaintiff's malicious prosecution claim must be denied.

### 3. The Court Denies Defendants' Motion to Preclude the Testimony of Dr. Torgovnick

Defendants' third claim contests the proffered testimony of Plaintiff's expert witness, Dr. Josh Torgovnick,  Incorporating the standards set forth by the Supreme Court in *Daubert*, Federal Rule of Evidence 702 allows for the testimony of an expert witness where:

      (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b) the testimony is based on sufficient facts or data;

      (c) the testimony is the product of reliable principles and methods; and

      (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert*, meanwhile, sets out two main prongs of inquiry: first, the trial court must determine whether the expert is "qualified"; and second, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Defendants do not challenge the witness's qualifications, but rather the reliability of his testimony.

    At the request of his counsel, Plaintiff was examined on April 15, 2014, by Dr. Torgovnick. (Farrar Decl. Ex. O). Dr. Torgovnick interviewed Plaintiff, examined his arrest and medical records, and conducted an examination. (*Id.*). Neither Plaintiff's CT scans nor Dr. Torgovnick's examination produced evidence of injuries stemming from his arrest. (*Id.*). Rather, Dr. Torgovnick concluded that, "[g]iven the history as outlined in the records and by the patient, his symptoms are typical." (*Id.*). He stated that Plaintiff's reported "physical symptoms of headache, dizziness, and nausea" were "consistent with the type of head injury that he described," namely a concussion. (*Id.*). He additionally stated that these symptoms were consistent with those of other victims of (non-police) assault he had seen. (*Id.*). Finally, Dr. Torgovnick opined that Plaintiff "didn't attempt to exaggerate his examination." (*Id.*).

17

Defendants attack Dr. Torgovnick's testimony on multiple grounds.[5] First, "it is not clear from the report provided what, if any, medical conclusion Dr. Torgovnick is making based on his evaluation of Plaintiff"; second, Dr. Torgovnick's opinion is not grounded in sufficient facts or data to be found reliable; third, the opinion is not stated to a "reasonable degree of medical certainty"; and fourth, it goes to the ultimate issue of fact.  (Def. Br. 9-11).  The Court finds these objections unavailing.

The Supreme Court has emphasized the flexibility of *Daubert*'s reliability inquiry; courts are not to apply a mechanical checklist, but rather to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 152 (1999).  The report makes clear that Dr. Torgovnick has found, based upon his experience, his interview of Plaintiff, his physical examination, and his review of the medical and other records, that Plaintiff's reported symptoms are consistent with concussion and assault. Defendants have identified no specific deficiency in this method of inquiry, and other courts have rejected *Daubert* challenges to a physician's testimony where the physician "spoke to [the plaintiff] and reviewed his medical records, photographs from the time of his arrests, and statements by other witnesses."

---

[5]  The Court notes that Defendants do not seek at this time to exclude Dr. Torgovnick's report under Federal Rule of Civil Procedure 37 for failure to comply with Rule 26(a)(2)(B).

*Horvath* v. *City of New York*, No. 12 Civ. 6005 (RJD)(JMA), 2015 WL 1757759, at *7 (E.D.N.Y. Apr. 17, 2015).

At the same time, it may be appropriate to limit Dr. Torgovnick's testimony to the medical evidence within his expertise, and to preclude portions of the report that appear to conclude that Plaintiff was assaulted by Defendants.  *See Horvath*, 2015 WL 1757759, at *8 ("The Court declines to preclude Dr. Jubanyik's testimony.  However, the testimony will be limited at trial to subjects about which she is competent to testify.  Dr. Jubanyik may not testify as to *who* assaulted plaintiff, render ultimate legal conclusions — such as whether excessive force was used — or regurgitate plaintiff's account of the events at issue." (internal citations omitted) (emphasis in original)).  Such concerns are properly the subject of a motion in limine, and do not justify precluding the report under *Daubert*.

## CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment and preclusion of Dr. Torgovnick's testimony is DENIED.  The parties are directed to appear before the Court for a conference on **August 27, 2015, at 3:30 p.m.** in Courtroom 618 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007.  The Clerk of Court is directed to terminate the motion at Docket Entry 37.

SO ORDERED.

Dated:   August 6, 2015
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge