F9E5jenC                    conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NORMAN JENKINS,

                Plaintiff,

            v.                          13 Civ. 3405 (KPF)

NEW YORK CITY POLICE
DEPARTMENT, *et al.*

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        September 14, 2015
                                        11:05 a.m.

Before:

                    HON. KATHERINE POLK FAILLA,

                                        District Judge

                        APPEARANCES

ROBERT J. BOYLE
GIDEON O. OLIVER
     Attorneys for Plaintiff

ZACHARY W. CARTER
     Corporation Counsel for the City of New York
BY:  TAVISH C. DEATLEY
     Assistant Corporation Counsel

F9E5jenC                        conference

1          (Case called)

2          MR. BOYLE:  Robert Boyle, 277 Broadway for

3    Mr. Jenkins.  Your Honor, Mr. Jenkins is sitting to my left.

4          THE COURT:  Good morning, Mr. Jenkins.

5          PLAINTIFF:  Good morning.

6          MR. OLIVER:  Co-counsel Gideon Oliver.  Good morning,

7    your Honor.

8          THE COURT:  Good morning, Mr. Oliver.

9          MR. DEATLEY:  Good morning.  Tavish Deatley for the

10   City of New York and Officer Charles and Ruiz.

11         THE COURT:  I am trying to make a note that your name

12   is in three syllables and I apologize in advance if I

13   mispronounce it because I am going to forget that at some

14   point.  I am sensitive to my name being pronounced correctly.

15   So, please excuse me.

16         MR. DEATLEY:  That is perfectly fine, your Honor.

17         THE COURT:  Mr. Boyle, we are here because I have

18   issued an opinion in the last month and the real question is

19   next steps.  Have you and Mr. Deatley had an opportunity to

20   speak about the case?

21         MR. BOYLE:  Yes, your Honor, we did briefly earlier

22   this morning, and we discussed possible scenarios for

23   submission of a pretrial order and maybe the possibility that

24   we could also negotiate again, and I think we are both desirous

25   of setting some deadlines for both of those things.

F9E5jenC                         conference

1          THE COURT:  Well, me too.  If the parties will indulge

2     me for a moment I just want to make sure, is Judge Peck still

3     the magistrate judge to whom the case has been assigned?

4          MR. BOYLE:  Yes; and we did very early on have a

5     settlement discussion in front of Judge Peck.

6          THE COURT:  This was attended to what used to be

7     called the 1983 plan?

8          MR. BOYLE:  It wasn't a mediation but it was a -- it

9     may have fallen under that plan.  It wasn't an official

10    mediation, it was a settlement conference.  We did not get very

11    far and during the course of it and actually at the conclusion

12    Judge Peck indicated that it generally was not his practice to

13    do a second one if he couldn't get anywhere at the first one.

14    So, I would suggest if it were advisable that another

15    magistrate judge might be appropriate.

16         THE COURT:  Well, okay.  It is a possibility although

17    it is very rarely done.  That's usually done in situations

18    where there are conflicts.  I am also available to do the

19    conference but I think I'm going to just foreshadow what I

20    think Judge Peck would say which is if the parties think that

21    that is something that would be useful, I'll do it but I'm not

22    going to do it if it is going to go nowhere.  The first one,

23    which was obviously in February, in or about February 2014,

24    that's when the referral was sent back to me so it has been a

25    year and a half since then and obviously more discovery has

F9E5jenC                        conference

1    taken place and there is an opinion which gives some sense of

2    at least one Judge's views about the matter.  But I will ask

3    Judge Peck if he wants to do it again.  I can ask another

4    magistrate judge or I can do it myself but the real question

5    is, is that a fruitful use of everybody's time.

6             One moment, Mr. Deatley.

7             MR. DEATLEY:  Of course, your Honor.

8             MR. BOYLE:  I think, your Honor, especially since

9    Mr. Deatley is relatively new on the case and there is a

10   summary judgment opinion now and there has been discovery,

11   maybe we could speak informally first before we show up at a

12   proceeding in front of the magistrate judge, just kind of see

13   if we are in the same ballpark or whether there would be

14   movement.  Perhaps that might be the way to best proceed so we

15   don't waste the parties' time and the Court's time around that.

16   But, we would certainly be willing to do that.

17            THE COURT:  Okay.

18            Can I ask you just to have a seat for a moment.

19   Mr. Deatley?  Is that what you are about to say, sir?

20            MR. DEATLEY:  Yes, your Honor.  If I may.

21            I think maybe because I am new to the case as well as

22   the fact that I just learned that Judge Peck had previously

23   indicated that maybe a second conference may not be the best, I

24   think if we could have a week and then we could write a letter

25   to your Honor informing that a summary conference may not be

F9E5jenC                      conference

1    fruitful or that the parties do believe that that would be

2    something that would be vital.

3          THE COURT:  Indulge me please for a moment, I just

4    want to look at something.

5          MR. DEATLEY:  Of course.

6          THE COURT:  Let me explain what I was looking at.  I

7    was reviewing my opinion and I do remember that and I wanted to

8    make sure I remember it here.

9          Mr. Jenkins, because you are here, obviously you are

10   well served by your counsel but I want to let you know as well

11   sometimes people on both sides of the V, as it were, plaintiffs

12   and defendants, ascribe way too much importance to one Judge's

13   opinion.  The fact that this case goes forward should not be

14   taken by anyone in the room to mean that there is going to be a

15   multi-million dollar judgment at some later date by some jury

16   or, conversely, that a jury is going to give a no-cause, give

17   nothing to it.  So, what I would really like the parties to do

18   is the following:

19         Take the time that you need which, let's say, is two

20   weeks to really think about it and, if I may be so bold as to

21   suggest as to be realistic on both sides about what you want

22   out of this.  If in two weeks you find yourselves -- I use the

23   expression in the same time zone, you say in the same ballpark,

24   then let's talk about whether I can be of assistance to you --

25   if you want me to use yet another sports metaphor -- in getting

F9E5jenC                    conference

1    this over the goal line.  If not, then let's just set a trial

2    because we actually have time in November and -- I mean we have

3    time in October but I would actually like to have the parties

4    get some time to do their *in limine* motions and I don't know if

5    Mr. Deatley is quite ready for an October trial right now but I

6    am ready for November and I am ready for December and we can do

7    that and then we can get this case moving.

8            So, let's take two weeks to everybody think

9    realistically, please, please cut down the puffery.  I say that

10   not only as someone who has seen a lot of puffery but as

11   someone who is, as we speak right now, trying to broker a

12   settlement and so I know from both sides how the game is

13   played, and then just let me know.  In two weeks, if there is

14   something I can do to help I'm very happy to help.  I don't

15   want to break this streak.  I have an unbroken streak of cases

16   I have been involved in doing settlement conference for.  If

17   not, who knows?  Trials are fun, I have a new clerk, she wants

18   trials so let her have it.

19           So, can I hear, in two weeks, in a joint letter from

20   the parties?  Will that work?

21           MR. DEATLEY:  Yes, your Honor.

22           MR. BOYLE:  Yes, your Honor.

23           THE COURT:  Terrific.

24           Mr. Boyle, while you are here and since you brought

25   your client, is there anything else we should be talking about

F9E5jenC                        conference

1   today, sir?

2           MR. BOYLE: No, your Honor.

3           THE COURT: Okay.

4           MR. BOYLE: I think that's it. Terrific.

5           Mr. Oliver, anything else, sir?

6           MR. OLIVER: No thank you, your Honor.

7           THE COURT: Mr. Deatley?

8           MR. DEATLEY: Your Honor, if I may, would it be

9   possible to tentatively schedule the trial date or joint

10  pre-motion conference letter?

11          THE COURT: The moment that you tell me it's not going

12  to work I will do it. Let me just, please -- I have November

13  16th available. I have the week of November 9th but there is

14  Veterans' Day that will interrupt it. I have November 2nd

15  available. You don't want the week of Thanksgiving, November

16  30th right after. And then I have at the moment the whole of

17  December available. So, Mr. Boyle, while I have you and

18  Mr. Oliver here, do you have trials, sir, criminal or

19  otherwise, for this time period?

20          MR. BOYLE: No. I do -- I'm on the CJA Second Circuit

21  panel and have two briefs coming up and, if your Honor I am

22  sure is familiar, they're not too inclined on adjournments

23  these days under their new trials.

24          THE COURT: I am familiar.

25          MR. BOYLE: I am going to take all of that into

F9E5jenC                      conference

1    account and consult with Mr. Oliver and Mr. Deatley to have one

2    of those realistic dates and we will figure that out.

3                THE COURT:  Thank you.

4                MR. BOYLE:  One other thing?

5                THE COURT:  Yes, sir.

6                MR. BOYLE:  How long before the actual trial date does

7    your Honor expect the pretrial order?

8                THE COURT:  Four weeks, usually.  Usually I like four

9    weeks to have the pretrial order, the suggested voir dire and

10   request to charge and the suggested *in limine* motions, if there

11   are any, and then two weeks prior to the trial -- well, I'm

12   sorry, three weeks prior to the trial so one week later I would

13   like the responses and then one week after that I would like to

14   have the final pretrial conference resolve the *in limine*

15   motions which sometimes has the effect of clarifying for the

16   parties where they stand with respect to the case, and then

17   going forward two weeks later.

18               MR. BOYLE:  Okay.

19               THE COURT:  And my expectation is this is not going to

20   exceed one week.  Do you agree, sir?

21               MR. BOYLE:  I would think it wouldn't exceed one week.

22               THE COURT:  Thank you.

23               And Mr. Oliver, same question; important trials,

24   things that I should know about, sir?

25               MR. OLIVER:  Not that I can think of with the

F9E5jenC                    conference

1    exception of plans to be out of town around Thanksgiving and

2    Christmas.

3            THE COURT:  Same here, sir.

4            MR. OLIVER:  I thought as much.

5            THE COURT:  Okay.  Thank you.

6            And Mr. Deatley?

7            MR. DEATLEY:  No, your Honor.  The November 16th and

8    on dates works for us.

9            THE COURT:  November 16th and on, that's good to know.

10   And I don't -- no, no, no, that's fine.

11           MR. BOYLE:  Sorry.

12           THE COURT:  If it turns ow very quickly that you are

13   very, very far apart, let me know sooner.  Two weeks is the

14   outside deadline but certainly you can let me know beforehand

15   if the parties are working well and would like some assistance

16   or for sure will not be able to settle this.  I just figure two

17   weeks would give you the most amount of time to look at your

18   records and see what positions you have.  All right.  Anything

19   else?

20           PLAINTIFF:  Excuse me, your Honor.  May I speak,

21   please?

22           THE COURT:  You may, sir.  The only thing I am going

23   to say is sometimes folks like to talk through their counsel.

24   If you want to preview it with Mr. Boyle, that's fine.  If you

25   are feeling brave, go ahead and talk to me, sir.

F9E5jenC                          conference

1          PLAINTIFF:  Good morning, your Honor.  Thank you for

2     allowing me to sit in front of you all.

3          THE COURT:  Can I impose upon you to use the

4     microphone, sir?

5          PLAINTIFF:  I heard what you say about realistic.  I

6     am always on the same page with my lawyers.  I assume I

7     shouldn't be talking but when you say the realistic part, there

8     is only right that you intervene in that, know what I'm sayin',

9     because both parties we don't have realistic -- my life means

10    everything to me, you hear me?  So, realistic is never going to

11    be realistic to the opposing party, know what I'm sayin', but

12    with you intervening, know what I'm sayin', then keeping the

13    both of us, know what I'm sayin', on a realistic living because

14    we already been through that, like, we been through that, like,

15    they offered me --

16         THE COURT:  Don't tell me.  They offered you something

17    you didn't take correct, sir?

18         PLAINTIFF:  That's all I was going to say.

19         THE COURT:  Thank you.

20         PLAINTIFF:  And so the realistic part of it, like it's

21    not going to be fair for both of us.  But my lawyers, they're

22    great, know what I'm sayin', and he is just new on the case so

23    our realistic is not realistic.  I'm telling you we don't even

24    have to go through that.  We can sit in front of you and you

25    come up with something that's realistic and you come up with

1   something that's realistic and we go from there because you

2   could be more realistic about it than both of us.  Me?  I'm

3   taking it personal.  Everything that happens to me I'm taking

4   it personal all the way to the psychological level.  I'm taking

5   it personal.  So, only you can understand what's realistic with

6   the situation right here.  We are not going to -- realistic to

7   him is they're -- not even half of the stuff they're going to

8   argue is not realistic because I was assaulted by three police

9   officers.  He seen it was an assault so after that it was like,

10  know what I'm sayin', I am still like what I'm trying to tell

11  him, CCRB, the Civil Claims Review Board, I'm still involved

12  with them.  They haven't even finished doing their

13  investigation.  It's been five years.

14          So my realistic -- my realistic is, like, James Blake

15  just got thrown down to the ground and got an apology already.

16  I don't have anything.  I am still dealing -- I am all the way

17  in the courts, district courts, and basically the opposition is

18  basically wondering whether or not that's ordinary practice,

19  that's what you supposed to do, this is supposed to happen to

20  me.

21          THE COURT:  Let me say this, Mr. Jenkins.

22          PLAINTIFF:  How will it be realistic?  There has been

23  no apologies, no sorry Mr. Jenkins.  There has been none of

24  that.

25          THE COURT:  Let me say this.  Number one, one benefit

F9E5jenC                    conference

1    each side has is that even though this, for you, is your

2    special case relating to these special events in this court,

3    they have had other cases, criminal and civil, and Mr. Deatley

4    has, I don't think he has appeared before me before because I

5    don't think I have mangled his name before but I know that he

6    works in an organization with people who are before me every

7    day.  And so even if he himself -- he may have a hundred cases

8    to draw upon from his prior experience to talk about what those

9    cases are like but if he doesn't, he has very thoughtful people

10   at his organization at the Corporation Counsel to talk to him

11   about what these cases are like.

12           So, I think in the first instance you all need to, if

13   you will put your heads together, you and your lawyers and then

14   he and his people, and then get together and see if there is

15   something and, yes, if there is any way that I can be useful, I

16   will.  I do have a sense from the civil cases that have

17   proceeded to trial before me, I have some sense of what things

18   are worth.  I have some sense about how cases have settled and

19   what they've settled at.  So, that's fine.  You know,

20   circumstances, that I can't order them to apologize to you.

21           PLAINTIFF:  I know that.

22           THE COURT:  So, to the extent it is the emotional

23   trauma and drama, nothing we can do about that.  All they can

24   do is give you money, or not.  And so, we will have to -- I

25   want you to keep that in mind.

F9E5jenC                        conference

1          PLAINTIFF:  Yes, ma'am.

2          THE COURT:  I also, I think your attorneys will tell

3    you this better and I don't mean to be taking, stepping on

4    their toes because I don't want to, but I would just say it is

5    often said that the most successful settlement is a settlement

6    where neither side is happy, no one is going home feeling

7    great, they feel like they've given too much and that's kind of

8    how you know it actually was the right settlement because both

9    sides -- no one should feel as though they've gone home and put

10   something over on somebody else.  You give.  And you give

11   because it is certain and it is final and it is done and that

12   is, for some people, easier, more palatable, than having a jury

13   sit there and decide your fate and potentially give you more or

14   potentially give you nothing.

15          So, both of your attorneys have done this before and

16   they'll talk to you and they'll sit down with you and think

17   about what really are your damages and what you really can hope

18   to achieve and then Mr. Deatley will talk with his people about

19   what types of cases have they had where similar allegations

20   have been made and what have they done, how have they been

21   resolved?  Settled?  Trial?  Who knows.  He may not know your

22   case as well as you do because who does, sir, but he knows

23   litigating these types of cases a little bit better than you do

24   because it is your first and it is his not first.

25          PLAINTIFF:  Okay.

F9E5jenC                              conference

1              THE COURT:  Okay, sir?

2              PLAINTIFF:  Yes, ma'am.

3              THE COURT:  But, my point remains:  If I can help,

4     that's why I am here.

5              PLAINTIFF:  Okay.

6              THE COURT:  All right.  Thank you very much for coming

7     in today.

8              Do you need a transcript?  It might be nice.  Consider

9     sharing the cost of the transcript.  Thank you.

10                               o0o

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25