```
FC9JJENF                          Trial
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NORMAN JENKINS,

            Plaintiff,

       v.                              13 Civ. 03405 KPF

NEW YORK CITY POLICE
DEPARTMENT, et al.,

            Defendants.

------------------------------x
                                       December 9, 2015
                                       8:30 a.m.


Before:

              HON. KATHERINE POLK FAILLA,

                                       District Judge
                                         and a jury


                       APPEARANCES

ROBERT J. BOYLE,
GIDEON ORION OLIVER,
ABRAHAM J. HASSEN,
     Attorneys for plaintiff

MICHAEL A. CARDOZO,
Corporation Counsel for the
City of New York
     100 Church Street
     New York, New York  10007
DANIEL LOUIS PASSESER,
TAVISH CORYELL DeATLEY,
     Assistant Corporation Counsel
```

1              (Trial resumes)
2              (In open court; jury not present)
3              THE COURT:  Good morning, everyone.  Thank you for
4     coming in early this morning.  Please be seated.
5              Mr. Boyle, where is your client?
6              MR. OLIVER:  Your Honor, if I may respond to that?
7              THE COURT:  Yes, sir.  Excuse me.
8              MR. OLIVER:  I may have more information than Mr.
9     Boyle, is the only reason I am volunteering.
10             THE COURT:  Of course.
11             MR. OLIVER:  I did communicate the court's direction
12    to be here at 8:30 to my client.  He acknowledged that he
13    received that direction this morning, but I have not heard from
14    him since then.
15             THE COURT:  Okay.
16             MR. OLIVER:  I did hear from him this morning and I
17    also know that he expressed the desire to be present, to be
18    notified of and be present at any conference or communication
19    with the court about this matter.
20             THE COURT:  Of course.  It would seem to me that I
21    cannot at this juncture resolve what I understand to be a
22    motion to withdraw without hearing why you wish to withdraw,
23    and I don't think I can do that in his absence.
24             Do you agree, sir?
25             MR. OLIVER:  I do agree.

1    THE COURT:  All right.  At some point -- and that
2    point is going to come in about 10 minutes -- we need to do
3    something.  I don't know how you get to make the motion to
4    withdraw without him here.  There are bigger issues with him
5    not being here at the appointed hour.  For the moment I believe
6    there are other things I can do.  Let me focus on those.  I am
7    actually -- this one goes to Mr. Boyle?  You'll tell me.
8         I have a question for you about the public records
9    exception.  It is a continuation of what we were talking about
10   yesterday and, sir, certainly if you want to think about this
11   some more, you may.
12        My understanding from reading up on the public records
13   exception was that the reason for the reliability of public
14   records stems from two things, and one is that it is
15   anticipated that if someone has a legal duty to make certain
16   reports, they will, in fact, discharge that duty and you can
17   trust on the reliability of the courts because they're
18   obligated to do them.
19        Secondly is the notion of inconvenience, the idea a
20   government official or public official who is responsible for
21   preparing these reports should not be or might not want to be
22   inconvenienced by coming in to testify at trial.  Do you have
23   that same understanding?
24        MR. BOYLE:  Yes, your Honor.
25        THE COURT:  These are some of the purposes?

1             MR. BOYLE:  Amongst others.
2             THE COURT:  Yes, of course.
3             The issue for me, sir, is unlike the warrant and
4    notices, I don't know, and perhaps you can find out if there is
5    some obligation or duty -- legal, regulatory or otherwise -- on
6    the part of individuals affiliated with the Parole
7    Department -- is it the Department of Community --
8             MR. BOYLE:  It is the --
9             (Multiple voices)
10             MR. BOYLE:  It was by that time a part of DOCCS,
11    Division of Parole.
12             THE COURT:  Okay.  We'll call it the Division of
13    Parole.  I know that these were chronological entries.  That is
14    what they appear to me to be.  They look to be basically the
15    same thing I have done in connection with my cases to keep
16    notes for myself and my law clerks about what is going on in a
17    particular case.
18             I, for example, don't have a duty to write these notes
19    down.  I do so because it is convenient and makes sense, and if
20    I stop being a judge tomorrow, the person who takes my place
21    can figure out what happened.
22             But, but, as all hypotheticals, but I don't know
23    whether the reason why Mr. Watkins and Mr. Peart had these
24    chron entries is because they have an obligation to do so or
25    they simply find it convenient to do so.  For me that may

1   matter in the determination whether or not these items are
2   public records.  I just wanted to give you that heads-up, and
3   you might want to think about that some more, or if you know
4   already, you can talk to me about it now.
5            MR. BOYLE:  I don't know already and I would like to
6   think about it some more.
7            I would add, the argument is very much based on the
8   face of the rule, which says if it is a public record which on
9   its face documents -- and I am paraphrasing because I don't
10  have it in front of me -- the activity, actions of the agency,
11  and what your Honor was speaking of is certainly the theory of
12  why the exception should exist, but I would submit the words,
13  "on its face" and I go also back to Judge Weinstein, if on its
14  face it sets forth the activities of the agency, and in this
15  case addressing solely the chronological file, it memorializes
16  primarily the conversations we would be seeking to enter,
17  conversations between Parole Officer Watkins and his
18  supervisor, Mr. Peart.
19           I understand there are some entries in the
20  chronological, a message from Mr. Jenkins and a message from
21  Ms. Hamilton --
22           THE COURT:  Yes.
23           MR. BOYLE:  -- which might not fall into that because
24  it is not the activities of the agency.  So if the court was,
25  if the court was inclined not to admit all of it, I would

1    certainly say that the memorializations of the communications
2    between Mr. Watkins and Mr. Peart I think, is his name, do fall
3    on its face, fall under the rule.
4           THE COURT:  Okay.  I am going to ask to talk to the
5    folks at the back table.  Mr. Passeser, is it you or Mr.
6    DeAtley this morning and do you want some time to think about
7    this?
8           MR. PASSESER:  I would just say, your Honor, with
9    respect to the entries in the chrono report, it is my
10   understanding, based on the face of that document, those
11   entries reflect the activities not of the Division of Parole,
12   they reflect the activities of Parole Officer Ralph Watkins.
13          THE COURT:  Are they not employees of the Division of
14   Parole?
15          MR. PASSESER:  They are, but it is not an official
16   agency function.  It is one employee's notes.  If he wants to
17   come in and testify and lay a foundation for the public records
18   exception, that is one thing.
19          THE COURT:  I am not going to correct you.  I think
20   you would agree with me that if he were to come in here, there
21   would clearly be a business records function that could be
22   made?
23          MR. PASSESER:  Could be made.
24          THE COURT:  I think the public records exception is
25   one foundation that does not have to be made.  I understand

1    what you're saying.  I will think about it further as well.

2            You also had an application, you and Mr. DeAtley,

3    regarding the placement of the testimony of Dr. Torgovnick.

4            MR. PASSESER:  Correct.

5            THE COURT:  I hate to make you sit down and stand up,

6    but I will talk to Mr. Oliver about that, or Mr. Boyle, whoever

7    wishes to speak to it.

8            Gentlemen, I understand that Dr. Torgovnick has sort

9    of a flat-fee arrangement with you all to testify, and it might

10   be inconvenient for him to testify to other points.  That said,

11   my day yesterday was altered by forces beyond my control, and

12   is there no other time in this week that Dr. Torgovnick may

13   come in to testify?

14           MR. BOYLE:  The quick answer is yes.

15           After we left court yesterday, I communicated with him

16   at the end of the day.  It was actually after counsels'

17   communication, and he indicated -- actually, I understand their

18   theory is they don't want him to testify before the plaintiff

19   is finished.

20           THE COURT:  Yes.

21           MR. BOYLE:  He starts appointments each day at 1:15.

22   So if he got on later this morning, perhaps he could finish.

23           The better part, and which I confirmed with him, was

24   keep first thing on Thursday open and that he would then come

25   in then.

Case 1:13-cv-03405-DLC Document 111 Filed 12/30/15 Page 8 of 16    178
FC9JJENF                Trial

1       THE COURT: That is perfect. All right. Mr. Boyle,
2  sir, or Mr. Oliver, we are now at 8:45. We are 15 minutes
3  past, and I will say this:
4       I know you have a motion to make. I assume that
5  hasn't dissipated in the time since we began, but you may
6  understand that among the many reasons, I have concerns about
7  the motion, recognizing nonetheless I have to hear specifics,
8  is that I have no confidence that Mr. Jenkins will abide by
9  rules as simple as showing up on time to discuss issues.
10      Let me ask this: Is it an application to change
11 counsel? Is there someone waiting in the wings? Is Mr. Hassen
12 going to make an emergency application for admission to the
13 Southern District? I am seeing an expression that suggests,
14 "no." Does he wish to do this pro se, sir?
15      MR. BOYLE: Your Honor, the application, and also
16 sensitive to not communicating its substance while Mr. Jenkins
17 isn't here, isn't at this point an application for
18 substitution. I can't represent to the court that I have been
19 informed there is a substitution.
20      THE COURT: All right. I have the right, I think, to
21 deny it out of hand because he is not even here, correct?
22      MR. BOYLE: Deny?
23      THE COURT: Deny the application that you haven't made
24 to me yet. I have 15 minutes before trial, the trial day
25 begins. The whole point of having the parties come in at 8:30

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     is so we can resolve it so I can further attempt to repair my

2     credibility with this jury and have the trial begin at 9:00

3     o'clock.

4              I do appreciate sometimes things happen, but I don't

5     know what to tell you.  If the man is not here, and we can

6     check to see if he is on the line and needs to be pulled off of

7     it, as of the commencement of this conference, there was no

8     line with the court security officers and there was no line to

9     pull him out of.  I don't know what to tell you.

10             MR. BOYLE:  Frankly, your Honor, I don't know.  I have

11    never faced this situation before in 35 years.

12             THE COURT:  Yes.

13             MR. BOYLE:  I don't know quite what the procedure

14    would be.  My application is based in part on consideration --

15             THE COURT:  May I stop you because you are talking

16    about logistics and I can talk about that.

17             What I was going to say is if Mr. Jenkins appears in a

18    reasonable amount of time, which actually we are just about

19    past, I was going to invite the defense team, both counsel and

20    the witnesses to go into the conference room that is adjacent

21    to my robing room.  I did not want them in the hallway because

22    jurors might be coming by and I did not want them to have to

23    sort of sit there idly.  I also do not want them here because I

24    imagined that you, Mr. Oliver and Mr. Jenkins, wanted to tell

25    me things that might implicate the attorney-client privilege in

1     matters of privacy.  Therefore, that is the plan.

2             I'll do it, but I can't do it if he is not here.  At
3     9:00 o'clock he is the witness in this case.  If he is not
4     here, we are going to rest.  I am not trying to make this a
5     parade of horribles.  I am disappointed, as I am sure you are,
6     and I am sure you're as confused as I am, but where the heck is
7     he?  We have to do something.

8             May I suggest this:  I want to let you finish your
9     statement that I derailed a few moments ago if you like to.
10    Then I will step off the Bench and we'll see what happens.

11            MR. BOYLE:  I have nothing more to add at this point,
12    your Honor.

13            THE COURT:  I believe that I have done what I needed
14    to do.  That is my list of things, my housekeeping list that
15    doesn't involve Mr. Jenkins having to be present.

16            If there is anything else the parties would like to
17    raise with me right now, please do because certainly we want to
18    begin in as timely fashion as we can.  Do you have anything
19    else, Mr. Boyle?

20            MR. BOYLE:  No, your Honor.

21            THE COURT:  Mr. Oliver, anything else?

22            MR. OLIVER:  Not at this time.

23            THE COURT:  Mr. Passeser, something, sir?

24            MR. PASSESER:  We left the drugs in our office.  If
25    plaintiff is going to rest and we need to put on our case

1    today, we hope someone can bring them here.  We were not
2    expecting to put on Officer Charles today.
3             THE COURT:  I understand that.  I am assuming there is
4    a Rule 50 motion to be made?
5             MR. DeATLEY:  Yes.
6             MR. PASSESER:  There is.  I don't know that it will be
7    fully dispositive.
8             THE COURT:  I would give you, if we need to have you
9    put on your case, I will give you that.  Off the record,
10   please.
11            (Off-the-record discussion)
12            (Recess)
13            THE COURT:  Please be seated.
14            Mr. Boyle or Mr. Oliver, I am advised it is almost
15   9:00 o'clock.  It is 2 minutes to 9:00.  9:00 o'clock is going
16   to come and go.  The jury is here and I don't have your client.
17            Mr. Oliver?
18            MR. OLIVER:  Yes, your Honor.
19            As I said, I did communicate to Mr. Jenkins the
20   court's direction to be here at 8:30.  I communicated that
21   direction yesterday both by e-mail and by text message.  I did
22   not get confirmation from him that he had gotten the message
23   until 7:40 this morning.
24            The next that I was able to able to communicate with
25   him was just a moment ago when I called him a number of times

1     and he picked up and said he was on the train at 42nd Street,
2     planned to get off at the Canal Street Station and walk down to
3     the courthouse.  Was not able to get any more information
4     because the reception on the phone appeared to cut out.  So
5     that is all the information that I have that I can provide the
6     court with regarding Mr. Jenkins' whereabouts.
7              THE COURT:  Mr. Oliver, let me talk to you for a
8     moment then and hear from the folks at the back table.
9              Everybody knows what happened yesterday, sir.  There
10    was an outburst that required the intervention of Court
11    Security Officers and the United States Marshal Service, and
12    though I was in my rights to end the trial yesterday, I asked
13    that he speak with you, that he try to calm down, and that if
14    it happened again, I would terminate, I would end the case for
15    failure to follow the court order or some other appropriate
16    reason.
17             He is not here right now and momentarily it will be
18    9:00 o'clock.  I will wait until 9:00 o'clock.  He was supposed
19    to be here at 8:30.
20             I understand there is an application that you have to
21    withdraw, but I am wondering whether I need to hear it because
22    I am within my rights now to end this case for failure to
23    prosecute, and so I want to hear your view on that.
24             MR. OLIVER:  I think our view on that is we need to
25    make the application to withdraw.

1       THE COURT: You may. Sir, is this going to implicate
2   information you prefer not be shared with everyone else?
3       MR. BOYLE: I don't think so, and I will stop if in
4   the course of talking that comes up.
5       I think everyone would appreciate it is an awkward
6   position because I am not -- assuming the court was even
7   inclined to grant a motion to withdraw, we are not, we are not
8   relieved yet, and under the rules of this Court and the rules
9   of professional responsibility, the client's rights come first.
10      THE COURT: Yes, sir.
11      MR. BOYLE: So while --
12      THE COURT: Sir, that is precisely why I was asking
13  whether you you needed to make this motion because I then have
14  no one speaking for Mr. Jenkins.
15      MR. BOYLE: I guess it is more of a question if I did
16  something substantive, would I then be waiving my motion that
17  was going to be heard; in other words, conceding it wasn't
18  necessary. That is my concern.
19      THE COURT: I understand.
20      MR. BOYLE: Because there are things I would want to
21  say to protect Mr. Jenkins' rights, an application, if the
22  Court was inclined to dismiss the case or failure to prosecute,
23  I want to put that on the record because under the rules and my
24  obligations as an attorney, and he is not here, and I am still
25  his attorney. Mr. Oliver and I are still his attorneys, and I

1     am duty-bound to do that.
2              I am reluctant to do it without him here, but I would
3     have to -- that part of it wouldn't implicate the
4     attorney-client, anything in the attorney-client privilege.
5     That is the quandary I have.
6              THE COURT:  Yes.  Sir, I don't see how I can grant the
7     motion you're contemplating to withdraw given Mr. Jenkins' lack
8     of understanding of the rules of evidence and the rules of my
9     court, given the fact that I am concerned about having him
10    prosecuting his case on his own, and given the fact that the
11    trial began and this case has persisted for two and a half
12    years with you there as his counsel.
13             I think it is the notion of changing horses
14    mid-stream.  We are in the middle of trial.  I don't think it
15    is appropriate to suddenly have you leave, but I don't know, I
16    don't know, and I know there are other things going on.  I
17    wanted to hear from the folks at the back table.  It is now
18    9:03.  He is not here.  Mr. Passeser.
19             MR. PASSESER:  We have no choice but to move for
20    failure to prosecute under Rule 41 (b).  We can't proceed with
21    the trial without him.  The jury's time and our time is being
22    wasted, the court's time being wasted and there is no one to
23    blame but him.
24             THE COURT:  I am reluctant in doing this, but I am
25    going to terminate the case for failure to prosecute.

1          Mr. Boyle, you want to say something else?

2          MR. BOYLE:  For the record, on behalf of Mr. Jenkins,

3    and without, and without waiving any of the arguments I would

4    make had I made the motion, he objects to that and we would

5    request at least a continuance until he is here.

6          THE COURT:  I understand.  The issue, sir, this is not

7    happening in a vacuum.  There were approximately 14 or 15

8    individuals in various security capacities affiliated with this

9    courthouse who were here because of his outburst yesterday, and

10   they're here today because of concerns about my safety.

11         That is why I ended the proceedings yesterday.  He

12   knew how important it was to get here by 8:30 this morning.  He

13   knew that, and he confirmed it, and he is not here and he is

14   not here at 8:45, which is the other time he was supposed to be

15   here.  He was late yesterday, and I have a jury waiting and I

16   am not going to have them wait any more.

17         For whatever reason, he has seen fit not to appear.  I

18   understand he has some transit issues, but I don't believe that

19   he has been in transit for hours and hours, and given the fact

20   he was quite late yesterday, he knew, he knew that there were

21   transit issues and he needed to address them.

22         So I don't do this easily.  I don't do this lightly,

23   but I have no choice, given what he has done, but to terminate

24   this case for failure to prosecute, and I am doing that now.

25         I do that thanking the parties for the work that they

1   have done and recognizing the issues that will come from there.
2   Thank you.  May I see counsel in the back.  Thank you.
3            (Off-the-record discussion)
4            (Court adjourned)