

YOUR HONOR

AT LEAST

Order AN INjuction

Temporary relief

Order

LOST MY Mother

THIS TIME MY SON iS

SIX Getting Tired of This!!!

RECEIVED
SDNY DOCKET UNIT
2017 FEB -2  AM 11: 16

NORMAN JENKINS
NYSID: 0518178R
10-10 HAZEN STREET
ERIC M. TALOR CORRECTIONAL FACILITY
EAST ELMHURST, NEW YORK 11370

Janauary 20, 2017

DAVID GRAUBARD
RIKERS ISLAND JUDITIAL CENTER
240 MANDANICI ROAD
EAST ELMHURST, NEW YORK 11370

RE: DISCOVERY/JUDICIAL SUBPOENA
    WARRANT# 752838

Dear Mr. Graubard:

I am writing you inregards to requesting all discovery and a
Judicial Subpoena.

On certiorari, the United States Supreme Court chief justice,
noted in MORRISSEY v BREWER, 408 U.S. 484, "Fair Treatment... will
enhance the chance of rehabilitation by avoiding reactions to arbi-
trariness." (Supra).

The New York State Administrative Procedure Act, 303 states:
Except as otherwise provided by statue, the agency or one or more
hearing officers designated and empowered by the agency to conduct
hearings, shall be presiding officers. "Hearings shall be conducted
in an impartial manner..."

... When a presiding officer is disqualified or it becomes im-
practical for him to continue the hearing, another presiding officer
may be assigned to continue with the case, unless, it is shown that
substantial prejudice to the party will result therefrom...

13cv 3405

Norman Jenkins
EMTC B#C #
3491612279
10-10 Hazen St
East Elmhurst, NY
11370

(1)



RECEIVED
JAN 3 1 2017
VERNON S. BRODERICK
U.S. DISTRICT JUDGE
S.D.N.Y.

A prosecutor (Parole Specialist), whom manufactures false evidence, might well subject the prosecutor (prs) to criminal penalties. See e.g. 18 U.S.C. 1622, (subordination of perjury), or disciplinary sanctions, See N.Y. Comp. Codes Rules and Reg. Title 1200, 33(A)(6)(2000) (DR 7-102(a)(6). See: United state Court of Appeals Second Circuit decision Higazy v Templeton, 505 F.3d 161 ... The parolee is not the only one who has a atake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life, within the law of society, thus has an interest in not having parole revoked, because of erroneous information or because of an erroneous evaluation of the need to revoke parole given the breach of parole conditions. See Morrisey v Brewer, 408 U.S. at 484.

New York Executive Law Section 259-c state board of parole: functions, powers and duties, (11) Make rules for the conduct of its work. A copy of such rules and any amendments thereto to be filed by the chairman with the secretary of state. (Supra).

New York Rules and Regulations (NYCRR) 8000.4. modification of decision. In its discretion, the board may revoke or modify any of its decisions or dterminations.

NYCRR 8000.5 Parole Records. (b). The division shall cause complete records to be kept of every person on parole or conditional release. Such records shall contain the aliases and photographs of each person and the information referred to in subdivision (a) of this section, as well as all reports of parole officers in relation to such persons.

(c). Access to case records maintained by the division of parole. (1) An inmate a releasee or counsel for either may have access to information contained in the parole case records.

(2)

NYCRR 8005.17. Hearing Schedules. (c) Adjournments (1). An application to adjourn a previously scheduled final revocation hearing must be filed with the hearing coordinator at the local area office which scheduled the hearing at least seven days in advance of the scheduled hearing date, except that: (1) For those hearings scheduled to be conducted within New York City, the application must be filed with the parole violation unit of the division of parole, located at: 314 West 40th Street, New York, N.Y. 10008... (Supra).

### DISCOVERY

1. Requesting the applications to adjourn my final hearing from 12-7-16 to 12-29-16, and the application to adjourn my final hearing for over a month from 12-29-16 to 1-31-17. (never the less the reason why).

2. Requesting the reason why the presiding hearing offices Judge Landes was disqualified from presiding over my final hearing on 12-7-16, and why Judge Cox was substituted to preside over my final hearing on 12-29-16.

3. Requesting the preliminary hearing minutes for the preliminary hearing held on 11/28/16.

4. Requesting the final hearing minutes for 12-7-16 and 12-29-16.

5. requesting on-site drug and alcohol test records.

6. Requesting all chronological reports and day sheet from 2/7/13 to 12/29/16.

7. Requesting all documents from Parole Officer James Harford concerning supervising Norman Jenkins.

(3)

8. Requesting all inquiries concerning Norman Jenkins civil claim against the division of parole.

## JUDICIAL SUBPOENA

9. Requesting judicial subpoena for:

A. Amy B. Marion, Esq.
   666 Old Country Road Suite 700
   Garden City, New York 11530.

B. Don K. Taylor (paralegal)
   666 Old Country Road Suite 700
   Garden City, New York 11530.

C. All telephone conversations recorded by Amy B. Marion, Esq.
   with reginal director Drayton, 314 West 40th Street, New York,
   N.Y. 10018.

D. Reginal Director Warthrall
   14 Bruckner Blvd.
   Bronx, New York 10054.

## IN ARGUENDO

Enclosed are documents that support my position that I am being harassed and threatened by parole, whom refuse to investigate their corrupted practice... for the last seven (7) years.

Respectfully submitted

Norman Jenkins
Norman Jenkins

Sworn before me
this 20th day of January 2017

NOTARY PUBLIC
OKECHI IGBO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01IG6163948
Qualified in Queens County
My Commission Expires April 07, 20

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK)

COUNTY OF ___BRONX___ ) SS:.

Name of Document: ___DISCOVERY AND JUDICIAL SUBPOENA___

___NORMAN JENKINS___ , being duly sworn deposes and says;

That I have on the 20 day of ___January___ , 200_17_, served a copy of the within, upon the below parties, by placing a copy in a pre-paid envelope, to be duly mailed via the United States Postal Service, through the institutional mailroom located at the Department of Correction, Eric M. Taylor Center, to the following concerned parties;

Respectfully Submitted,

Petitioner

B&C# ___3491612279___

10-10 Hazen Street

East Elmhurst, NY 11370

Sworn to before me this

20 day of ___January___ , 200_7_

NOTARY PUBLIC

NKECHI IGBO

NOTARY PUBLIC-STATE OF NEW YORK

No. 01IG6163948

Qualified In Queens County

My Commission Expires April 09, 2019

* HON. JOHN COX
* DAVID GRAUBARD
  RIKERS ISLAND JUDICIAL CENTER
  240 MANDANICI ROAD
  EAST ELMHURST, N.Y. 11370

* DISTRICT JUDGE VERNON S. BRODERICK
  U.S. COURTHOUSE
  SOUHERN DISTRICT OF NEW YORK
  40 FOLEY SQUARE
  NEW YORK, N.Y. 10007

* NYS BOARD OF PAROLE
  TINA M STANFORD, CHAIRWOMAN
  CENTRAL OFFICE
  97 CENTRAL AVENUE
  ALBANY, N.Y. 12206

* MR. ERIC SCHNEIDERMAN
  N.Y. ATTORNEY GENERAL
  120 BROADWAY
  NEW YORK, N.Y. 10271

* AMY B. MARION, ESQ.
  666 OLD COUNTRY ROAD SUITE 700
  GARDEN, NEW YORK 11530



STATE OF NEW YORK

**DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION**

THE HARRIMAN STATE CAMPUS – BUILDING 2
1220 WASHINGTON AVENUE
ALBANY, N.Y.  12226-2050

ANTHONY J. ANNUCCI
ACTING COMMISSIONER

MAUREEN E. BOLL
DEPUTY COMMISSIONER AND COUNSEL

May 12, 2014

Ms. Colene Morton-Scott
The City of New York
Law Department
100 Church Street
New York, NY 10007

Re:   **FOIL Log. No. 14-1562
Norman Jenkins,
NYSID No. 05103178R**

Dear Ms. Morton-Scott:

This is in response to your request for records concerning Norman Jenkins, NYSID No. 05103178R.

Attached please find records responsive to your request.

I, Kimberly Sesselman, hereby certify that the enclosed are true and accurate copies of records maintained by the State of New York Department of Corrections and Community Supervision.

Sincerely,

Kimberly Sesselman
Administrative Assistant
F.O.I.L. Unit

KS/csr
ATTACHMENT
cc:   Freedom of Information

DEF000271

```
CMSCHRON* * *        NEW YORK STATE - DOCCS       * * *      DATE: 03/19/2014
                      COMMUNITY SUPERVISION                   PAGE:     2
                      PAROLEE CHRONO REPORT
                    FROM 05/21/2010 THRU 04/15/2011

   NAME: JENKINS,NORMAN                         AREA: MANHATTAN IV
NYSID: 05103178R                         SPO NAME: CROMER,BRENDA
   DIN: 89A3768                             PO NAME: HARFORD,JAMES


 DATE      TIME   TYPE                         ACTIVITY        LOCATION

ENTERED BY: AZEVEDO,MARIA
AREA: BRONX V        SPO NAME: DELRIO,EDWARD       PO NAME: SHAW,LELEITH
09/02/2010 12:03PM PAROLE VIOLATION UNIT     PVU-FINAL HEARIN  COURT
CONTACT ADDRESS: RI JUDICIAL CTR
WARRANT #0611289.  ON 09/01/2010, THE BOARD MODIFIED RECOMMENDATION OF
REVOKE AND RESTORE TO REVOKED AND RETURNED/HOLD 012 MONTHS.
SPO REVIEW: NONE
-------------------------------------------------------------------------
ENTERED BY:
AREA:               SPO NAME:                    PO NAME:
08/20/2010 06:58AM FOIL CLOSED
*REDACTED - THIS INFORMATION HAS BEEN REDACTED AS IT IS EXEMPT FROM PUBLIC
DISCLOSURE PURSUANT TO SECTION 87(2)(A), (B), (F), AND (G) OF THE PUBLIC
OFFICERS LAW AND 9 NYCRR SECTION 8000.5(C)(2)
-------------------------------------------------------------------------
ENTERED BY: GUZMAN,MARINA
AREA: BRONX V        SPO NAME: DELRIO,EDWARD       PO NAME: SHAW,LELEITH
08/17/2010 01:07PM PAROLE VIOLATION UNIT     PVU-PAROLE ADJRN  COURT
CONTACT ADDRESS: RI JUDICIAL CTR
WARRANT NO. = 0611289, FINAL HEARING OF 08/16/2010
ADJOURNMENT REASON = PRS - FOR WITNESS
SPO REVIEW: NONE
-------------------------------------------------------------------------
ENTERED BY: MOORE,IVAN CRAIG
AREA: BRONX V        SPO NAME: DELRIO,EDWARD       PO NAME: SHAW,LELEITH
07/29/2010 03:27PM PAROLE VIOLATION UNIT     PVU-PAROLE ADJRN  COURT
CONTACT ADDRESS: RI JUDICIAL CTR
WARRANT NO. = 0611289, FINAL HEARING OF 07/26/2010
ADJOURNMENT REASON = PRS - FOR WITNESS
SPO REVIEW: NONE
-------------------------------------------------------------------------
ENTERED BY: MOORE,IVAN CRAIG
AREA: BRONX V        SPO NAME: DELRIO,EDWARD       PO NAME: SHAW,LELEITH
06/29/2010 04:18PM PAROLE VIOLATION UNIT     PVU-PAROLE ADJRN  COURT
CONTACT ADDRESS: RI JUDICIAL CTR
WARRANT NO. = 0611289, FINAL HEARING OF 06/28/2010
ADJOURNMENT REASON = PRS - FOR WITNESS
SPO REVIEW: NONE
-------------------------------------------------------------------------
ENTERED BY: BENJAMIN-HURDLE,JAMALA
AREA: BRONX V        SPO NAME: DELRIO,EDWARD       PO NAME: SHAW,LELEITH
06/14/2010 11:15AM PAROLE VIOLATION UNIT     PVU-PAROLE ADJRN  COURT
CONTACT ADDRESS: RI JUDCAL CTR 3
WARRANT NO. = 0611289, FINAL HEARING OF 06/07/2010
ADJOURNMENT REASON = BY DIVISION NOTICE OF HRG
SPO REVIEW: NONE
-------------------------------------------------------------------------
```

DEF000272

```
CMSCHRON* * *          NEW YORK STATE - DOCCS        * * *      DATE: 03/19/2014
                     COMMUNITY SUPERVISION                      PAGE:       3
                     PAROLEE CHRONO REPORT
                  FROM 05/21/2010 THRU 04/15/2011
```

```
 NAME: JENKINS,NORMAN                          AREA: MANHATTAN IV
 NYSID: 05103178R                           SPO NAME: CROMER,BRENDA
  DIN: 89A3768                               PO NAME: HARFORD,JAMES
```

```
DATE       TIME    TYPE                    ACTIVITY        LOCATION
```

```
ENTERED BY: WATKINS,RALPH L
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
05/26/2010 12:50PM TELEPHONE TO OTHER      LAW ENFORCEMENT
FINAL HEARING SCHEDULED FOR 6 4 10.
SPO REVIEW: NONE
------------------------------------------------------------------------
ENTERED BY: WATKINS,RALPH L
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
05/25/2010 05:20PM OTHER VISIT W/PAROLEE   LAW ENFORCEMENT
SUBJECT SERVED HIS VIOLATION PAPERS AT MDC.
SPO REVIEW: NONE
------------------------------------------------------------------------
ENTERED BY: WATKINS,RALPH L
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
05/25/2010 01:00PM OTHER WORK
VOP SIGNED AND SUBMITTED
FOR PROCESSING.
SPO REVIEW: NONE
------------------------------------------------------------------------
ENTERED BY: WATKINS,RALPH L
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
05/25/2010 11:30AM OTHER WORK
VOP COMPLETED AND SUBMITTED
TO TYPING.
SPO REVIEW: NONE
------------------------------------------------------------------------
ENTERED BY: WATKINS,RALPH L
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
05/24/2010 05:05PM LETTER TO OTHER
WARRANT FAXED TO MDC 212 225 1501.
SPO REVIEW: NONE
------------------------------------------------------------------------
ENTERED BY: PEART,WINSTON K
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
05/24/2010 04:32PM OTHER WORK          WARRANT ISSUED    AREA OFFICE
NEW ARREST WARRANT 0611239 ISSUED ON 05/24/2010
SPO REVIEW: NONE
------------------------------------------------------------------------
ENTERED BY: PEART,WINSTON K
AREA: BRONX IV       SPO NAME: PEART,WINSTON       PO NAME: WATKINS,RALPH
REPORT TAKEN BY: PEART,WINSTON
05/24/2010 04:30PM CASE CONFERENCE         LAW ENFORCEMENT
                                           DELINQUENCY
                                           WARRANT ISSUED
SPO PEART DISCUSSES CASE AND ISSUE WARRANT FOR SUBJECT. PO WILL FAX CERTIFIED W
ARRANT TO MANHATTAN HOUSE AND WILL SERVE VOP ON SUBJECT VOP AFTER EARLY MORNING
FIELD TOMORROW.
SPO REVIEW: 05/24/2010
------------------------------------------------------------------------
```

DEF000273

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

NORMAN JENKINS,

                                        Plaintiff,

                  - against -

OFFICER VICTOR CHARLES, ET AL,

                                        Defendants.
------------------------------------------------------------------------X

**DEFENDANTS'
SUPPLEMENTAL
DISCLOSURES PURSUANT
TO RULE 26(e)**

13 CV 3405 (KPF)

     **PLEASE TAKE NOTICE,** that defendants by their attorney, Zachary W. Carter, Corporation

Counsel of the City of New York, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, hereby

supplement their disclosures as follows:

    i.    The name and, if known, the address and telephone number of each individual likely to
have discoverable information-along with the subjects of that information-that the
disclosing party may use to support its claims or defenses, unless the use would be
solely for impeachment.

        1.    Leleith Shaw, Deputy Chief, New York State Department of Corrections and
Community Supervision, Division of Parole, 14 Bruckner Avenue Bronx NY 10454
[subject and information: plaintiff's parole revocation]; and

        2.    Richard Rivera, Shield 1739, FDNY-EMS, 9 MetroTech Center, 4th Floor,
Brooklyn, New York 11201-3857, [subject and information: plaintiff's pre-
arraignment screening].

171

FC9JJENF                    Trial

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   NORMAN JENKINS,

 4               Plaintiff,

 5          v.                          13 Civ. 03405 KPF

 6   NEW YORK CITY POLICE
     DEPARTMENT, et al.,
 7
                 Defendants.
 8
     ------------------------------x
 9
                                        December 9, 2015
10                                      8:30 a.m.

11

12   Before:

13                  HON. KATHERINE POLK FAILLA,

14                                      District Judge
                                          and a jury
15

16                        APPEARANCES

17   ROBERT J. BOYLE,
     GIDEON ORION OLIVER,
18   ABRAHAM J. HASSEN,
          Attorneys for plaintiff
19
     MICHAEL A. CARDOZO,
20   Corporation Counsel for the
     City of New York
21        100 Church Street
          New York, New York  10007
22   DANIEL LOUIS PASSESER,
     TAVISH CORYELL DeATLEY,
23        Assistant Corporation Counsel

24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.

172

FC9JJENF                        Trial

1              (Trial resumes)

2              (In open court; jury not present)

3              THE COURT:  Good morning, everyone.  Thank you for

4     coming in early this morning.  Please be seated.

5              Mr. Boyle, where is your client?

6              MR. OLIVER:  Your Honor, if I may respond to that?

7              THE COURT:  Yes, sir.  Excuse me.

8              MR. OLIVER:  I may have more information than Mr.

9     Boyle, is the only reason I am volunteering.

10             THE COURT:  Of course.

11             MR. OLIVER:  I did communicate the court's direction

12    to be here at 8:30 to my client.  He acknowledged that he

13    received that direction this morning, but I have not heard from

14    him since then.

15             THE COURT:  Okay.

16             MR. OLIVER:  I did hear from him this morning and I

17    also know that he expressed the desire to be present, to be

18    notified of and be present at any conference or communication

19    with the court about this matter.

20             THE COURT:  Of course.  It would seem to me that I

21    cannot at this juncture resolve what I understand to be a

22    motion to withdraw without hearing why you wish to withdraw,

23    and I don't think I can do that in his absence.

24             Do you agree, sir?

25             MR. OLIVER:  I do agree.

FC9JJENF                     Trial

1          THE COURT:  All right.  At some point -- and that

2    point is going to come in about 10 minutes -- we need to do

3    something.  I don't know how you get to make the motion to

4    withdraw without him here.  There are bigger issues with him

5    not being here at the appointed hour.  For the moment I believe

6    there are other things I can do.  Let me focus on those.  I am

7    actually -- this one goes to Mr. Boyle?  You'll tell me.

8          I have a question for you about the public records

9    exception.  It is a continuation of what we were talking about

10   yesterday and, sir, certainly if you want to think about this

11   some more, you may.

12         My understanding from reading up on the public records

13   exception was that the reason for the reliability of public

14   records stems from two things, and one is that it is

15   anticipated that if someone has a legal duty to make certain

16   reports, they will, in fact, discharge that duty and you can

17   trust on the reliability of the courts because they're

18   obligated to do them.

19         Secondly is the notion of inconvenience, the idea a

20   government official or public official who is responsible for

21   preparing these reports should not be or might not want to be

22   inconvenienced by coming in to testify at trial.  Do you have

23   that same understanding?

24         MR. BOYLE:  Yes, your Honor.

25         THE COURT:  These are some of the purposes?

FC9JJENF                         Trial

1           MR. BOYLE:  Amongst others.

2           THE COURT:  Yes, of course.

3           The issue for me, sir, is unlike the warrant and

4     notices, I don't know, and perhaps you can find out if there is

5     some obligation or duty -- legal, regulatory or otherwise -- on

6     the part of individuals affiliated with the Parole

7     Department -- is it the Department of Community --

8           MR. BOYLE:  It is the --

9           (Multiple voices)

10          MR. BOYLE:  It was by that time a part of DOCCS,

11    Division of Parole.

12          THE COURT:  Okay.  We'll call it the Division of

13    Parole.  I know that these were chronological entries.  That is

14    what they appear to me to be.  They look to be basically the

15    same thing I have done in connection with my cases to keep

16    notes for myself and my law clerks about what is going on in a

17    particular case.

18          I, for example, don't have a duty to write these notes

19    down.  I do so because it is convenient and makes sense, and if

20    I stop being a judge tomorrow, the person who takes my place

21    can figure out what happened.

22          But, but, as all hypotheticals, but I don't know

23    whether the reason why Mr. Watkins and Mr. Peart had these

24    chron entries is because they have an obligation to do so or

25    they simply find it convenient to do so.  For me that may

FC9JJENF                    Trial

1    matter in the determination whether or not these items are

2    public records.  I just wanted to give you that heads-up, and

3    you might want to think about that some more, or if you know

4    already, you can talk to me about it now.

5          MR. BOYLE:  I don't know already and I would like to

6    think about it some more.

7          I would add, the argument is very much based on the

8    face of the rule, which says if it is a public record which on

9    its face documents -- and I am paraphrasing because I don't

10   have it in front of me -- the activity, actions of the agency,

11   and what your Honor was speaking of is certainly the theory of

12   why the exception should exist, but I would submit the words,

13   "on its face" and I go also back to Judge Weinstein, if on its

14   face it sets forth the activities of the agency, and in this

15   case addressing solely the chronological file, it memorializes

16   primarily the conversations we would be seeking to enter,

17   conversations between Parole Officer Watkins and his

18   supervisor, Mr. Peart.

19         I understand there are some entries in the

20   chronological, a message from Mr. Jenkins and a message from

21   Ms. Hamilton --

22         THE COURT:  Yes.

23         MR. BOYLE:  -- which might not fall into that because

24   it is not the activities of the agency.  So if the court was,

25   if the court was inclined not to admit all of it, I would

FC9JJENF                    Trial

1    certainly say that the memorializations of the communications

2    between Mr. Watkins and Mr. Peart I think, is his name, do fall

3    on its face, fall under the rule.

4           THE COURT:  Okay.  I am going to ask to talk to the

5    folks at the back table.  Mr. Passeser, is it you or Mr.

6    DeAtley this morning and do you want some time to think about

7    this?

8           MR. PASSESER:  I would just say, your Honor, with

9    respect to the entries in the chrono report, it is my

10   understanding, based on the face of that document, those

11   entries reflect the activities not of the Division of Parole,

12   they reflect the activities of Parole Officer Ralph Watkins.

13          THE COURT:  Are they not employees of the Division of

14   Parole?

15          MR. PASSESER:  They are, but it is not an official

16   agency function.  It is one employee's notes.  If he wants to

17   come in and testify and lay a foundation for the public records

18   exception, that is one thing.

19          THE COURT:  I am not going to correct you.  I think

20   you would agree with me that if he were to come in here, there

21   would clearly be a business records function that could be

22   made?

23          MR. PASSESER:  Could be made.

24          THE COURT:  I think the public records exception is

25   one foundation that does not have to be made.  I understand

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# Barket Marion Epstein & Kearon, LLP

Attorneys at Law

666 Old Country Road, Suite 700
Garden City, New York 11530
[P] 516.745.1500 • [F] 516.745.1245

5 Columbus Circle, Suite 710
New York, New York 10019
[P] 212.972.1710
[Send mail to Garden City]

www.barketmarion.com

November 3, 2016

via FIRST CLASS MAIL
New York State Department of Corrections
Division of Parole
Regional Director Drayton
314 West 40th Street
New York, New York 10018

Dear Ms. Drayton:

I am writing this brief letter to memorialize our telephone conversation from this past Friday, October 28, 2016. A more detailed letter with pertinent dates and facts is forthcoming.

I called you regarding Claim #20160313-509091-[W] (see attached) and informed you that I represent the parolee, Mr. Norman Jenkins.

I informed you that Mr. Jenkins has been subjected to unlawful treatment and that he had put in the above-referenced claim to investigate unlawful conduct committed by employees of the Division of Parole.

I also informed you that the Mr. Jenkins' complaints and concerns regarding the Division are the subject of litigation pending in the United States District Court for the Southern District of New York and that the Judge hearing Mr. Jenkins' claims, informed me that I should call the Division regarding Mr. Jenkins' concerns.

Specifically, Mr. Jenkins' concerns date back to the year 2009 when he was arrested on May 22, 2009 and when the charges against him were dismissed because as clearly indicated in the Division's chronological, on June 5, 2009, PO Pagan of the 23rd precinct stated "that during their investigation it was determined that the subject was only defending himself against the attacker so they withdrew the charges."

On August 16, 2009, Mr. Jenkins was arrested again and, it was determined by the arresting officer as well as by the ADA (Assistant District Attorney) handling the case that the complaining witness was not credible.

1

At that time, Area Supervisor Javis Jenkins told Mr. Jenkins that even though these charges got dismissed, he was going to get Mr. Jenkins sent back to jail.

On May 22, 2010, Mr. Jenkins was arrested again. PO Watkins went to see Mr. Jenkins after this arrest. He saw that Mr. Jenkins had been assaulted and he handed Mr. Jenkins an arrest report along with the violation report. The arrest report had the false charge of trespassing and also contained the name, Zulfiqar Ahmed as the arresting officer.

The NYPD arresting officer for this case was Victor Charles. Victor Charles would not and did not incorrectly list his own name. The arrest report which Mr. Jenkins was handed and which we still have which incorrectly lists the wrong arresting officer, is a different arrest report than that which was generated by NYPD.

When the parole hearing for this arrest was to take place, it had to be adjourned several times and was adjourned at the Division of Parole's request, because the "wrong arresting officer" was subpoenaed for the hearing, demonstrating that the documentation contained "the wrong arresting officer."

Parole Specialist Shaw actually prepared a notification for the wrong officer and the officer who was incorrectly listed on the arrest report – proving that this incorrect name was on the arrest report.

It was and is no coincidence that this "wrong arresting officer" listed is an arresting officer from one of Mr. Jenkins' prior arrests. As stated previously, and which warrants repetition, an arresting officer prepares his own arrest report; he would not incorrectly list his own name. This arrest report was changed.

Ultimately, the Division of Parole recommended ten (10) month time assessment. However, the ALJ specifically noted and stated that this "seems too severe for one curfew violation established after a period of more than 2 years of satisfactory compliance and adjustment for a 1st violation." Thus, the ALJ recommended a revoke and restore to supervision.

This certainly must have infuriated Mr. Jenkins' parole officer and area supervisor who continued to harass and unjustly violate Mr. Jenkins' rights and liberties.

These charges of injustice are the subject of Mr. Jenkins' lawsuit pending in the United States District Court for the Southern District of New York.

Thank you for your attention to this matter and to our concerns.

Respectfully

Amy B. Marion, Esq.

2

To:  District Judge Vernon S. Broderick
U.S. Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

NYS Board of Parole
Tina M. Stanford
Chairwoman
Central Office
97 Central Avenue
Albany, NY 12206

Mr. Eric Schneiderman
Attorney General
120 Broadway
New York, NY 10271

New York State Department of Corrections
Division of Parole
Regional Director Warthrall
14 Bruckner Boulevard
Bronx, New York 10454

On Mon, Mar 14, 2016 at 6:04 PM, <NYSDOCCS@doccs.ny.gov> wrote:

*****************

New York State Department of Corrections and Community Supervision

Facility Operations

Regarding (20160313-509091-[W])

*****************

This is in response to your inquiry dated 3/13/2016.
You need to contact the Office of Community Supervision at 212-239-6355.

Click here to see facility address list:  http://www.doccs.ny.gov/faclist.html

------------

Your Inquiry:

im on parole but in 2010 parole violated my constitutional right in a kangroo court hearing when
they switch presiding officers two times and continue to use a warrant that had no probable cause
to hold me and violated my parole twice im in the southern district now im asking that i be
discharge from parole because to continue to supervise me is a miscarriage and  continuing abuse
of process

*****************

Do not reply to this message. All inquiries need to be made in writing to:

New York State Department of Corrections and Community Supervision

Building 2

1220 Washington Avenue

Albany, New York 12226-2050
Or through our website at:

http://www.doccs.ny.gov/contactus.htm

*****************

From: **Norman Jenkins** <normanjenkins47@gmail.com>
Date: Wed, Mar 16, 2016 at 7:08 AM
Subject: Re: Automated Delivery from NYSDOCCS@doccs.ny.gov
To: NYSDOCCS@doccs.ny.gov
Cc: Failla_NYSDChambers@nysd.uscourts.gov"
<Failla_NYSDChambers@nysd.uscourts.gov>

Please help me the division of Parole is trying to kill me  i won a summarry judgemnt every time
i tell them to dischatge me for what they did they threaten mr with jail im afraid for me and my
sons life 2. The Court Denies Summary Judgment as to Plaintiff's Malicious Prosecution Claim
A plaintiff bringing a claim for malicious prosecution under New York law must satisfy four
elements: "[i] that Defendants either commenced or continued a criminal proceeding against
him, [ii] that the proceeding terminated in his favor, [iii] that there was no probable cause for the
criminal proceeding, and [iv] that the criminal proceeding was instituted with actual malice."
Bermudez v. City of New York, 790 F.3d 368, No. 14-1125-cv, 2015 WL 3650756, at *6 4 The
Second Circuit, in Townes v. City of New York, found that a Section 1983 plaintiff could not
recover damages for an arrest supported by probable cause even where the initial stop was
unlawful, but found that the plaintiff "may have been entitled" to damages stemming from "the
brief invasion of privacy related to the seizure and initial search of his person." 176 F.3d 138,
149 (2d Cir. 1999). Courts considering Townes have since found that plaintiffs may recover
damages from a false arrest subsequently supported by probable cause, where such damages are
limited to the period between the arrest and the acquisition of probable cause. Morgan v. City of
New York, No. 12 Civ. 704 (WFK), 2014 WL 3407714, at *4 (E.D.N.Y. July 10, 2014); Lust v.
Joyce, No. 05 Civ. 613 (GLS)(RFT), 2007 WL 3353214, at *2 (N.D.N.Y. Nov. 9, 2007). Case
1:13-cv-03405-KPF Document 58 Filed 08/06/15 Page 10 of 19 11 (2d Cir. June 15, 2015).
"While police officers do not generally 'commence or continue' criminal proceedings against
defendants, a claim for malicious prosecution can still be maintained against a police officer if
the officer is found to 'play[] an active role in the prosecution, such as giving advice and
encouragement or importuning the authorities to act.'" Id. (quoting Manganiello v. City of New
York, 612 F.3d 149, 163 (2d Cir. 2010) (alteration in Manganiello)). The parties' positions
concerning Plaintiff's malicious prosecution claim have, to put it gently, evolved over the course
of the briefing; for this reason, the Court focuses on the arguments contained in each side's reply
submissions, which contain the most complete articulation of their positions. Defendants do not
contest that Plaintiff has at least raised a disputed issue of material fact with regard to each of the
elements of a malicious prosecution claim when considering Plaintiff's criminal prosecution —
which, it bears noting, was terminated some thirteen months after his arrest. Yet the parallel
revocation of Plaintiff's parole for eleven months plays a confounding role. Plaintiff argues that
Defendants' initiation of the criminal prosecution caused a separate set of damages stemming
from the concurrent decision to revoke his parole, which revocation he argues was proximately
caused by the prosecution; thus, the evolution of his parole revocation sentence from revoke and
restore, to twelve-month hold, to revoke and restore with time served, gives rise to damages for
the period of his incarceration due to his parole revocation. For Defendants, meanwhile, the
independent decision to revoke Plaintiff's parole Case 1:13-cv-03405-KPF Document 58 Filed
08/06/15 Page 11 of 19 12 means that he cannot have suffered any deprivation of liberty directly
caused by the criminal prosecution itself. The Court addresses each argument in turn. In the
handful of cases in which plaintiffs have pressed similar theories — a malicious criminal

prosecution resulting in a deprivation of liberty via a separate revocation of parole — courts have struggled with whether the requirement of favorable termination applies to the criminal prosecution alone, or to both the criminal prosecution and the revocation of parole. The requirement of favorable termination stems from Heck v. Humphrey, 512 U.S. 477 (1994), which held that "a prisoner ... has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." Id. at 489. Yet the Second Circuit, carefully parsing the concurrences and dissent in Spencer v. Kemna, 523 U.S. 1 (1998), has endorsed Justice Souter's position that "a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy." Id. at 21 (Souter, J., concurring). See Huang v. Johnson, 251 F.3d 65, 74-75 (2d Cir. 2001); Farrell v. Burke, No. 97 Civ. 5708 (DAB), 2004 WL 2813175, at *5 (S.D.N.Y. Dec. 8, 2004) ("That a majority of the Supreme Court justices have stated positions limiting the reach of Heck and allowing Section 1983 actions by former prisoners who are no longer in custody, has been acknowledged by the Second Circuit and district courts within this Circuit." (collecting cases)), aff'd, 449 F.3d 470 (2d Cir. 2006). Case 1:13-cv-03405-KPF Document 58 Filed 08/06/15 Page 12 of 19 13 Following Huang, at least one court in this District found that a plaintiff must prove the favorable termination of the parole revocation as well to press a malicious prosecution. Dallas v. Goldberg, No. 95 Civ. 9076 (LTS), 2002 WL 1013291, at *11-12 (S.D.N.Y. May 20, 2002). Yet Dallas is distinguishable in two important respects from the instant case: First, the Dallas plaintiff had already "sought, unsuccessfully, to attack directly the parole revocation decision through administrative channels and to challenge collaterally the revocation through state habeas corpus." Id. at *2. The Dallas plaintiff thus had his bite at the apple via habeas corpus; to allow him to relitigate the validity of his conviction through Section 1983 would raise precisely the specter that Heck was designed to forestall. Second, the plaintiff pleaded guilty to two of the three charges at the final parole revocation hearing in Dallas, which was held after his criminal charges had already been dismissed; there was thus far less to demonstrate a causal connection between the prosecution of the criminal charges and the revocation of his parole than in the instant case. In a case more squarely on point, another court in this District found that a plaintiff whose parole was revoked while criminal charges were pending could bring a Section 1983 claim where he had been conditionally released from his parole revocation before having an opportunity to fully pursue his administrative or habeas remedies. Hernandez v. Wells, No. 01 Civ. 4376 (MBM), 2003 WL 22771982, at *4 (S.D.N.Y. Nov. 24, 2003). Case 1:13-cv-03405-KPF Document 58 Filed 08/06/15 Page 13 of 19 14 Neither court squarely addressed the question before this Court: whether a claim for malicious prosecution can proceed when the favorable termination requirement is met only as to the criminal prosecution, and the parole revocation forms merely the basis of damages. This Court takes the position that nothing intrinsic to a malicious prosecution claim bars liability for the natural and foreseeable deprivations of liberty proximately caused by that malicious prosecution. Yet the requirement of proximate cause inherently incorporates Heck's favorable termination requirement, as well as Huang's exception: Where a plaintiff's parole revocation is determined to be valid independent of the criminal charges, that plaintiff cannot establish the requisite causal link between the prosecution and the parole revocation. Meanwhile, where a plaintiff's parole revocation has been favorably terminated, or where a plaintiff has been released from custody without a satisfactory opportunity to challenge the validity of that revocation, the plaintiff may press the argument that

the incarceration due to the parole revocation was proximately caused by the criminal prosecution. Applying this rubric to the instant case, Plaintiff was released before having an opportunity to challenge via habeas corpus the legitimacy of his eleven-month confinement for parole revocation. Accordingly, such confinement has not been confirmed to be valid, and Plaintiff is accordingly entitled to press a theory attributing the confinement to his criminal prosecution. Defendants alternatively argue, in their reply brief, that Plaintiff cannot establish a causal chain between their conduct and the Parole Board's decision Case 1:13-cv-03405-KPF Document 58 Filed 08/06/15 Page 14 of 19 15 to revoke Plaintiff's parole. (Def. Reply 5-6). "It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment." Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999). Yet Townes contains an important exception: "At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." Id. The Second Circuit has subsequently elaborated on this exception to Townes's independent judgment rule, noting the "tension" between "the principle that the intervening exercise of independent judgment will break a causal chain and the principle that defendants in section 1983 cases are liable for consequences caused by reasonably foreseeable intervening forces." Zahrey v. Coffey, 221 F.3d 342, 351 (2d Cir. 2000) (internal quotation marks and citations omitted). Resolving all factual ambiguities in Plaintiff's favor, the Court cannot conclude as a matter of law that Plaintiff's eleven-month incarceration for violation of his parole was not proximately caused by Defendants' conduct. The Court notes two factors compelling this conclusion. First, the Parole Warrant was issued based upon the criminal charges brought against Plaintiff — assault, resisting arrest, criminal trespass, and possession of marijuana (see Boyle Decl. Ex. 7) — which charges were themselves based upon Defendant Charles's statement (see Farrar Decl. Ex. H); a parole warrant may thus never have issued absent the allegedly false statements of the Officers. Second, the ALJ, considering merely the violation of curfew, found the Case 1:13-cv-03405-KPF Document 58 Filed 08/06/15 Page 15 of 19 16 appropriate remedy to be a revoke and restore, a finding affirmed by the Appeal Unit; the only actor to find a term of incarceration appropriate, the Parole Violation Unit, did not offer an explanation for its decision, raising the possibility that it acted in part based upon the criminal charges brought and the charges initially brought to the ALJ, but subsequently dropped. (See Farrar Decl. Ex. K, L; Boyle Decl. Ex. 5). The case is thus quite similar to Hernandez, in which the district court found that "[a] reasonable jury could conclude that Hernandez's incarceration resulted from Wells' claim that Hernandez punched him; if Hernandez had not been arrested and charged with assault, his parole may not have been revoked based on the alleged assault." 2003 WL 22771982, at *11. Accepting, as it must at this procedural stage, that Defendants fabricated the statements underlying both the criminal charge and the charges originally presented to the Parole Board, the Court cannot conclude as a matter of law that such fabrication did not proximately cause the revocation of Plaintiff's parole. Accordingly, the motion for summary judgment as to Plaintiff's malicious prosecution claim must be denied the parole proceeding was malicious the attatchment are the minutes to the hearins you see how the presiding officer kept chaning thats illegal and if you continue to try and cage me after you violate me ike that just discharge me bwcause yall wrong trying to arrest me leave me alone have sent these copies to every law agency and a federal judge who made this ruling in my favor continue and i will sue you for continue ro abuse me    yall violated federal and state statues executive law 259-D and 16 cfr

presiding officers and morrissey v Brewer you cant not viollate a parole on erroneous information

Case 1:13-cv-03405-DLC   Document 146   Filed 01/31/17   Page 25 of 34
Case 1:13-cv-03405-VSB   Document 14   Filed 12/31/13   Page 1 of 2

Case 1:13-cv-03405-KPF   Document 13   Filed 12/30/13   Page 1 of 2





USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _12|31|2013_

THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

MICHAEL A. CARDOZO
*Corporation Counsel*

BRIAN J. FARRAR
Assistant Corporation Counsel
Phone: (212) 356-2377
Fax: (212) 356-1148
Email: bfarrar@law.nyc.gov

December 30, 2013

<u>BY ECF</u>
Honorable Andrew J. Peck
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

*The settlement conference currently scheduled for Jan. 8, 2014 is rescheduled to Wednesday, February 19, 2014 at 9:30 AM in Courtroom 20D.*

*No further extensions will be granted.*

*12/31/2013*
SO ORDERED:

Hon. Andrew Jay Peck
United States Magistrate Judge

Re:   <u>Norman Jenkins v. P.O. Victor Charles, et. al.</u>
      13 Civ. 3405 (KPF) (AJP)

Your Honor:

I am the Assistant Corporation Counsel assigned to represent defendants Victor Charles, Robert Agate and Ramiro Ruiz in the above-referenced matter. For the reasons set forth below, the parties write jointly to respectfully request an adjournment of the settlement conference, presently scheduled for January 8, 2014 at 2:00 p.m. This is the parties' first request for an adjournment of the conference.

To date, plaintiff has not provided defendants with a settlement demand and thus, defendants have been unable to respond with a settlement offer in advance of the conference as required by Your Honor's Order. Additionally, there are outstanding discovery documents that defendants feel are necessary before substantive settlement discussions can take place. For instance, at the initial conference on November 6, 2013, defendants provided plaintiff with their initial disclosures and discovery demands. On November 26, 2013, plaintiff's counsel sought defendants' consent to provide plaintiff's initial disclosures by December 6, 2013, to which defendants agreed. However, plaintiff's initial disclosures were not provided until December 19, 2013. Said disclosures included copies of plaintiff's parole hearing minutes, which contains sworn testimony from several witnesses. The next day, on or about December 20th, plaintiff provided defendants with additional releases including, *inter alia*, releases for plaintiff's prison medical records, as well as parole records. The parties agree that these records are relevant to this matter and may have bearing on any potential settlement. Adjourning the settlement conference will help ensure that meaningful settlement discussions can occur.

STATE OF NEW YORK-EXECUTIVE DEPARTMENT-DIVISION OF PAROLE
AREA/BUREAU ANALYSIS

Name: Jenkins, Norman                    NYSID#: 5103178R
Date of Warrant:                         Location:
Warrant No.:                             Book & Case No.:
Date Enforced:                           (If applicable)

## SECTION ONE: BUREAU/AREA OFFICE ANALYSIS AND RECOMMENDATION

Parole Officer: WATKINS                  Bureau: BRONX IV

Preliminary Hearing : _____   Waived on _____ Held on _____  If preliminary hearing was held,
probable cause found on charge _____      NA 8/16/09

I RECOMMENDED ACTION:

A. ☐ Declare delinquent as of _____ and arrange for Final Revocation Hearing. Absconder ☐ Yes ☐ No
B. ☒ No delinquency pending court action.              C. ☐ No delinquency-no warrant issued.
D. ☐ Close case-delinquent time served—lift warrant on _____  E. ☐ Void previous Board decision of _____
F. ☐ Declare delinquent as of _____ and arrange for Final Revocation Hearing. Refer to HIIP, or other incarcerative diversion
       program (specify: _____), and, if successfully completed,
       cancel delinquency pursuant to 9 NYCRR section 8004.3(g). If not successfully completed, return to Correctional
       Facility unless violation is dismissed at hearing.
G. ☐ No Delinquency, warrant issued, lift warrant, return to supervision
   1 ☐ No new Special Conditions   2 ☐ Special Condition: Enter and successfully complete TFP.
   3 ☐ Special Condition: Successfully complete Electronic Monitoring for __ months.
   4 ☐ other Special Conditions: _____

H. ☐ Cancel Delinquency
   1 ☐ Restore to Supervision   2 ☐ Close by Maximum Expiration   3 ☐ Untimely hearing or non-curable service defect
   4 ☐ Insufficient basis to proceed to hearing   5 ☐ Alternatives or information not available at time of DD

## II REASONS FOR RECOMMENDED ACTION

The subject was convicted of Manslaughter 1° and released from Queensboro C.F. on 3/24/09. The subject
was arrested on 8/16/09 and charged with CPW 2° and Assault 2°. The subject was arraigned in Manhattan
Criminal Court under Docket#2009NY064334, bail set at $750.00 and case adjourned to 10/29/09. The subject
secured bail and is at liberty, reporting biweekly. The subject has been admonished and is being given special
condition prohibiting contact with complainant and the vicinity he was arrested. The investigation is continuing.
The ADA prosecuting the case has asked that the Division not use the complainant as a witness in a parole
hearing. Therefore, we recommend no delinquency pending court action while the investigation continue.

## III FOR THIS VIOLATION, ALTERNATIVES THAT WERE CONSIDERED AND REASONS WHY
APPROPRIATE/NOT APPROPRIATE:

☐ Check box if Bureau Analysis Continuation Sheet is attached.

Submitted By                W. Peart                _Winston Peart_   10/1/09
Senior Parole Officer _____  (Type Name)        (Sign)            (Date)

X Board Action Required – Submit for Board review

☐ No Board Action Required
    Declare delinquent as of ___/___/___ and arrange for Final Revocation Hearing. (If absconder, arrange for Final Revocation Hearing
    where apprehended)

Approved By
Area Supervisor _____   J. Jenkins           _____              10/1/09
                           (Type Name)           (Sign)             (Date)

COPIES: Board/QC, Folder

FORM 4003.2 (5/04)

Case 1:13-cv-03405-DLC   Document 146   Filed 01/31/17   Page 27 of 34

⬇ **Cycle 7** ⬆

**Violent Felony Offense**

**\* Cycle may not be supported by fingerprints**

**Arrest/Charge Information**

Arrest Date: August 16, 2009 02:37 pm (14:37:00)

| | |
|---|---|
| Fax Number | M55859 |
| Place of Arrest: | NYCPD 25 |
| Arrest Type: | Unknown |
| Date of Crime: | August 16, 2009 |
| Place of Crime: | NYCPD 25 |
| Criminal Justice | |
| Tracking No.: | 63732700H |
| Arresting Agency: | NYCPD PCT 025 |
| Arresting Officer ID: | 934693 |
| Arrest Number: | M09673973 |
| Arrest Charges: | |

— Criminal Possession Of A Weapon-2nd Degree: Loaded Firearm

    PL 265.03 Sub 01B      Class C    Felony Degree 2    NCIC 5299

— Assault 2nd Deg:Intent To Cause Physical Injury with Weapon/Instrument

    PL 120.05 Sub 02      Class D    Felony Degree 2    NCIC 1399

**Court Case Information**

— Court: <u>New York County Criminal Court</u>  Case Number: 2009NY064334

August 17, 2009

**Arraigned**

— Menacing-2nd:Weapon

    PL 120.14 Sub 01    Class A    Misdemeanor    NCIC 1316

— Assault 3rd Degree: With Intent To Cause Physical Injury

    PL 120.00 Sub 01    Class A    Misdemeanor    NCIC 1399

August 17, 2009

**Initial Report Of Docket Number**

April 15, 2010

**Dismissed, Failure To Provide Speedy Trial CPL30.30**

— Menacing-2nd:Weapon

    PL 120.14 Sub 01   Class A  Misdemeanor  NCIC 1316

— Assault 3rd Degree: With Intent To Cause Physical Injury

    PL 120.00 Sub 01    Class A    Misdemeanor    NCIC 1399

April 15, 2010

**Not Arraigned**

— Criminal Possession Of A Weapon-2nd Degree: Loaded Firearm

    PL 265.03 Sub 01B      Class C    Felony    NCIC 5299

— Assault 2nd Deg:Intent To Cause Physical Injury with Weapon/Instrument

    PL 120.05 Sub 02      Class D    Felony    NCIC 1399

April 22, 2010

**Sealed Upon Termination Of Criminal Action In Favor Of The Accused CPL160.50**

---

⬇ **Cycle 6** ⬆

**Violent Felony Offense**

**\* Cycle may not be supported by fingerprints**

**Arrest/Charge Information**



**NEW YORK STATE**

# Corrections and
# Community Supervision

ANDREW M. CUOMO
Governor

**ANTHONY J. ANNUCCI**
Acting Commissioner

November 10, 2016

Amy B. Marion, Esq.
666 Old Country Road, Suite 700
Garden City, New York 11530

Re: Mr. Jenkins, Norman
Din #89-A-3768

Dear Ms. Marion

I am in receipt of the correspondence dated November 3, 2016 regarding your client, Mr. Norman Jenkins. Please encourage Mr. Jenkins to surrender himself at any New York State Department of Corrections and Community Supervision area office to the warrant that was issued on October 13, 2016.

Respectfully,

Sabrina Drayton
Regional Director

RECEIVED

NOV 1 4 2016

Barket Marion
Epstein & Kearon, LLP

14

G5GQJENc

1    harassing me.  You know, this was the whole thing that I was

2    basically trying to point out in the reconsideration that after

3    you dismissed it, they basically were going to put disclaimers

4    on me and all that.  I'm going from through the same thing that

5    was being hid from you.  Like everything that I sent to you was

6    being hid.  What happened on August 16 when my retainer lawyer

7    went inside a parole hearing and hid the fact that they called

8    the wrong police officer that wouldn't show, the fact that the

9    police report that was used was a fake police report.

10          Now, after it was dismissed, I'm locked up again.  I

11   haven't committed a crime.  They locking me up for failure --

12   for saying I failed to report, and that I -- I tested positive

13   for cocaine.  I have proof from a drug program that I didn't

14   use cocaine.  And they harassing me here.  They try to prohibit

15   me now just to try to get the phone just now.  It's like

16   everybody's in my business.  It's like I'm in harm's way right

17   now.  And this parole has no jurisdiction over me.  What they

18   did back then, for them to continue to even try to supervise me

19   and sanction me or anything is a violation of my constitutional

20   rights.

21          And I understand that you walking away -- you want to

22   walk away from this case, but I'm being prosecuted right now

23   for what happened on August 10 -- I mean, pardon me, on May 22,

24   2010.  I have two parole officers that threaten my liberty and

25   threaten me not to pursue what I'm pursuing right now.  And I'm

SOUTHERN DISTRICT REPORTERS, P.C.

15

G5GQJENc

1    in the Department of Corrections, and they basically harassing

2    me.  Officers, they took my ID from me, took my money out of my

3    account, illegally they took the money out of my account, took

4    my ID and they told my I'm not going to make this call Monday,

5    they're going to make sure I don't make this call Monday.

6          When I went to the parole hearing, you said that you

7    inquired whether or not this had anything to do with my case.

8    I'm in front of the same people, the same judge that did that.

9    The parole specialist is now the deputy chairman.  She did the

10   exact same thing.  She's altering the documents.  I have proof.

11   I have all the documents she gave to me.  They switched judges

12   on me.  I have one judge that was going to allow to see the

13   parole officer to come in because I have pictures to show that.

14         THE COURT:  Mr. Jenkins, Mr. Jenkins, I need you to

15   slow down, sir.  You are going so fast.  I'm not taking down

16   everything you're saying.  Go a little bit slower.

17         MR. JENKINS:  All right.  So when I was arrested, I'm

18   doing the preliminary hearing.  So when I went to the

19   preliminary hearing, I was in front of a judge.  When the judge

20   asked me, I said I want to talk to the parole officer, so he

21   adjourned it so I could see the parole officer.  Leila Short,

22   the same one on August 16 comes in on my parole where she

23   switches up and sends the same judge back that doesn't allow

24   for me to call this witness and basically finds me guilty of

25   not reporting.  One time -- out of being on parole for eight

SOUTHERN DISTRICT REPORTERS, P.C.

G5GQJENc

```
 1   years, I don't report not one time, and you find probable cause
 2   saying that they come back with the other charges.  They done
 3   switch judges on me three times, a presiding judge where I
 4   already pointed out to them, yo, listen, this is illegal.  Now
 5   the Judge Landis that I pointed out to him, like, yo, listen,
 6   you illegally sat on my final hearing when you wasn't supposed
 7   to.  It was supposed to be the Judge Vilitrani.  I showed him
 8   the civil rules of why you can't just come on a case and
 9   qualify the case, and a judge can't substitute himself.  He
10   basically pushed my date all the way back to the 31st and
11   started asking me questions, am I going to sue him?  Am I going
12   to sue him?  I was like this has nothing to do with it.  This
13   has something to do with parole.  And right now every
14   proceeding that you're doing is illegal, and I'm asking them to
15   cut me loose, to cut my loose.  You don't have no jurisdiction
16   over me no more, none whatsoever.  You relinquished that.  You
17   can't continue to supervise me -- you can't say you didn't
18   see -- August 16, admitted right there, that's what the
19   defendants and my lawyers was hiding from me.  I didn't get
20   that until attorney Gideon gave me a hard drive.  When I
21   downloaded the hard drive, it had all these minutes in it that
22   I been saying for the longest -- I didn't even have a chance to
23   present it in a writ of habeas corpus and a Article 78 because
24   they hid it.  I didn't get it to Oliver.  He gave it to me.  It
25   was Boyle's hard drive.  They knew that.  Then on top of that
```

G5GQJENc

1    when they requested me for the deposition and asked me did I
2    file a 50-h hearing, I said no.  Boyle was right there that I
3    didn't have a 50-h hearing, but then when I get his paperwork,
4    when he gives me paperwork, I see where they did call me for a
5    50-h and he put in a lawsuit and he muted it by saying that I
6    was locked up on Rikers Island.  Rikers Island delivers.  They
7    produce who you need to go to a 50-h hearing, and he never told
8    me about that.
9              THE COURT:  Mr. Jenkins.  Mr. Jenkins.  Mr. Jenkins.
10   Again, sir, I want you to slow down, but let me speak for a
11   moment.  What I am understanding you to say is that right now
12   you believe you should not be at Rikers Island because you
13   believe that your term of parole was discharged and they had no
14   basis to violate you.  Do I understand that correctly, sir?
15             MR. JENKINS:  That's what I'm saying, ma'am.  They had
16   no basis to violate me.  None.  They made up all that stuff.
17   They made up everything, and they've been harassing me since
18   I--
19             THE COURT:  Two different things.  Not whether they
20   had a basis to violate you.  I understood you to be saying that
21   they don't even have -- that your time of supervision is done.
22   Is that correct?
23             MR. JENKINS:  OK.  I want to explain why I said that,
24   why I'm saying that.
25             THE COURT:  Yes, sir.

SOUTHERN DISTRICT REPORTERS, P.C.

G5GQJENc

1       MR. JENKINS:  OK.  Why I'm saying that, right, is that

2   when -- when they locked me -- when they maliciously prosecuted

3   me, right, and pushed me past the three years that I supposed

4   to have, that when you do three years of unprovoked parole,

5   they got to cut you loose, right.  They got to cut you loose.

6   And the fact that they was involved in illegally incarcerating

7   me, they can't make me do another three years of unprovoked

8   parole because you deny me equal protection of the law.  You

9   deny me my constitutional rights.  The only remedy that they

10   have is to discharge me on parole, but they continue to

11   sanction me.  They continue to parole me, and I've been

12   bringing this to their attention since 2011.

13       THE COURT:  Slow down, sir.  Slow down, sir.

14       Mr. Deatley or Mr. Passeser, do you have knowledge of

15   the maximum expiration date of Mr. Jenkins' parole term?

16       MR. DEATLEY:  Yes, we do, your Honor.  On the DOCCS

17   inmate lookup website, which I'm pulling up at the moment, I

18   could provide you with the exact date; but upon information and

19   belief from looking this morning, it's sometime in 2017, your

20   Honor.

21       THE COURT:  I see.  So, your position, sir, is that if

22   there is a basis to violate Mr. Jenkins -- and I'm not

23   necessarily saying there is -- they have the ability to do

24   that.  It's not as though they lack jurisdiction because his

25   time of supervision has ended.

SOUTHERN DISTRICT REPORTERS, P.C.

```
CMSCHRON* * *          NEW YORK STATE - DOCCS      * * *      DATE: 05/24/2016
                        COMMUNITY SUPERVISION                    PAGE:     1
                        PAROLEE CHRONO REPORT
                   FROM 12/16/2015 THRU 04/08/2016

  NAME: JENKINS,NORMAN                          AREA: MANHATTAN II
  NYSID: 05103178R                              SPO NAME: SHAW,LFLEITH
   DIN: 89A3768                                 PO NAME: GRAUBARD,DAVID


 DATE     TIME    TYPE                     ACTIVITY        LOCATION
 ENTERED BY: COCHRAN,FAITH
 04/08/2016 09:54AM OTHER WORK                          AREA OFFICE
 CASE FORWARDED TO PVU.
 SPO REVIEW: NONE
 ------------------------------------------------------
 ENTERED BY: COCHRAN,FAITH
 04/08/2016 09:30AM OTHER WORK              PRELIMINARY HEAR
  PRELIMINARY HEARING HELD ON THE ABOVE DATE. PROBABLE CAUSE FOUND. FINAL HEARIN
 G SCHEDULED FOR 4/19/16.
 SPO REVIEW: NONE
 ------------------------------------------------------
 ENTERED BY: COCHRAN,FAITH
 AREA: MANHATTAN II    SPO NAME: PAREDES,CLAUDIO    PO NAME: COCHRAN,FAITH
 04/05/2016 10:15AM CASE CONFERENCE                     AREA OFFICE
  CASE CONFERENCED WITH SPO PAREDES. PRELIMINARY HEARING AND ADJOURNMENT DISCUSS
 ED.
 SPO REVIEW: NONE
 ------------------------------------------------------
 ENTERED BY: COCHRAN,FAITH
 AREA: MANHATTAN II    SPO NAME: PAREDES,CLAUDIO    PO NAME: COCHRAN,FAITH
 04/04/2016 08:30AM OTHER WORK                          PRISON/JAIL
  PRELIMINARY HEARING ADJOURNED UNTIL 4/7/16. S REQUESTED A WITNESS, SPO PAREDES

 SPO REVIEW: NONE
 ------------------------------------------------------
 ENTERED BY: COCHRAN,FAITH
 AREA: MANHATTAN II    SPO NAME: PAREDES,CLAUDIO    PO NAME: COCHRAN,FAITH
 03/23/2016 12:09PM OTHER WORK                          AREA OFFICE
  PRELIMINARY HEARING SCHEDULED FOR 4/4/16 FINAL SCHEDULED FOR 4/14/16
 S IS CURRENTLY BEING HELD AT VERNON C. BAIN CENTER UNDER BOOK AND CASE # 980160
 0274.
 SPO REVIEW: NONE
 ------------------------------------------------------
 ENTERED BY: BROWN,JOANNA U
 AREA: MANHATTAN II    SPO NAME: PAREDES,CLAUDIO    PO NAME: COCHRAN,FAITH
 REPORT TAKEN BY: BROWN,JOANNA
 03/22/2016 09:20AM OFFICE REPORT W/PAROLEE
               SUBJECT TAKEN INTO CUSTODY WITH ASSISTANCE PONWANKAMA SUBJECT SER
 VIED COPY OF VLP 9011 REQUESTTED PRELIIINARY HEARING 4/4/16 FINAL 4/14/16
  SUBJECT PICKED UP  OPERATIONS MADNESS TEAM FOR TRANSPORT
 SPO REVIEW: 03/22/2016
 ------------------------------------------------------
 ENTERED BY: ROSADO,RICHARD
 AREA: MANHATTAN II    SPO NAME: PAREDES,CLAUDIO    PO NAME: COCHRAN,FAITH
 03/21/2016 12:26PM TELEPHONE FROM OTHER
 TF FEDERAL DISTRICT COURT JUDGE FAILLA 212-805-0290.  JUDGE FAILLA RECIEVED A
 LETTER FROM P INDICATING THAT DOCCS ISSUED A WARRANT FOR HIM ALTHOUGH HE HAS DO
 NE NOTHING WRONG.  HE HAS ASKED THE JUDGE TO INTERVENE ON HIS BEHALF.  JUDGE HA
 S CONNECTION TO P IN A CASE WHERE P FILED A SUIT AGAINST NYC POLICE DEPT.  JUDG
 E RULED AGAINST P.  P INDICATED THAT
 SPO REVIEW: NONE
```