UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
NORMAN JENKINS,                        :        13cv3405 (DLC)
                                       :
                    Plaintiff,         :        OPINION AND ORDER
                                       :
          -v-                          :
                                       :
POLICE OFFICER VICTOR CHARLES, POLICE  :
OFFICER RAMIRO RUIZ, and POLICE        :
OFFICER ROBERT AGATE,                  :
                                       :
                    Defendants.        :
                                       :
-------------------------------------- X

For the plaintiff:
Norman Jenkins, pro se
611 Edgecombe Avenue
New York, New York 10032

For the defendants:
Erin Teresa Ryan
Elissa Beth Jacobs
Dara Lynn Weiss
City of New York Law Department
100 Church Street
New York, New York 10007

DENISE COTE, District Judge:

     On January 12, 2018, as stated on the record at the final
pretrial conference, Norman Jenkins's claims were dismissed with
prejudice.  This Opinion and Order explains the basis for that
decision.  Although dismissing a case with prejudice is a "'harsh
remedy to be used only in extreme situations,'" this case presents
one.  Koehl v. Bernstein, 740 F.3d 860, 862 (2d Cir. 2014)
(quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d

Cir. 2009)).

## BACKGROUND

The claims in this action arise out of a police encounter with Jenkins on the street on May 22, 2010 at 2:30 a.m.  On May 23, Jenkins was charged with four felony counts associated with the incident.

On the night of his arrest, Jenkins was on parole and subject to a parole curfew.  Jenkins's parole officer, Ralph Watkins, was promptly notified of the arrest, and on May 24, a parole warrant was lodged against Jenkins.  The parole warrant charged him with four violations: three related to the criminal charges, and the fourth being a violation of the curfew.  Jenkins was held in custody pursuant to the parole warrant.  While bail had been set in the criminal case in the amount of $30,000 secured by $10,000 cash, Jenkins had not yet posted bail before he was detained without bail on the parole warrant.

A final parole violation hearing was held on August 20, 2010. At the beginning of the hearing, the New York State Division of Parole dropped the three parole violation charges related to the criminal charges, and proceeded solely on the curfew violation. The administrative law judge found Jenkins guilty of the curfew violation, and recommended that the parole board impose a sentence of "revoke and release," effectively time-served.  The parole

2

board disagreed with that sentencing recommendation, and imposed a sentence of 12 months' reincarceration.  On Jenkins's appeal, the appeals unit found that the parole board had failed to give reasons for its sentencing determination, and imposed a sentence of 11 months with time served, resulting in Jenkins's release on May 6, 2011.  Jenkins was represented by counsel throughout these parole proceedings.  The criminal charges against Jenkins were dropped on motion of the district attorney the next month.

On May 20, 2013, Jenkins, represented by new counsel, filed this action against the three defendant police officers he had encountered on the night of May 22, 2010, as well as the New York City Police Department and John/Jane Doe defendants, asserting that he was falsely arrested, excessive force was used in effectuating that arrest, and that he was prosecuted and his parole revoked on the basis of false charges and fabricated evidence.  After the close of discovery, the defendants moved for partial summary judgment, which was denied by the Honorable Katherine Polk Failla, to whom this case was then assigned. Jenkins v. New York City Police Dep't, 2015 WL 4660899 (S.D.N.Y. Aug. 6, 2015).  Judge Failla held that Jenkins had presented sufficient evidence to permit a reasonable jury to find that he was falsely arrested, and that the officers could be legally responsible for the time Jenkins spent incarcerated during the

parole revocation proceedings.  Trial before a jury began on
December 7, 2015.

On the second day of that trial, as his attorney presented
him with a document during his direct examination, Jenkins
"erupted" (in the words of the trial judge) against his counsel
and before the jury.  The judge dismissed the jury from the
courtroom and attempted to engage Jenkins in a colloquy.  Jenkins
repeatedly interrupted the judge and said at one point "I'm gone.
Not going to have this.  Take that as a gift."  When his attorney
tried to intervene, Jenkins proclaimed that "They are not my
advocate . . . . Hey, listen, I ain't going to sit up here.  I'm
fighting you all."  Shortly thereafter, Jenkins declared that he
would proceed <u>pro se</u>.  The judge explained to Jenkins that his
"yelling" at her did not help her understand his complaint.  The
judge prevailed upon Jenkins to consult with his counsel, and took
a recess to allow that to happen.

Following the recess, Judge Failla met with counsel and
agreed to adjourn the trial to the following day.  She warned
counsel that if Jenkins was "in the same state of mind" and "the
same combative nature in dealing with me" she would dismiss the
case.  Since plaintiff's counsel preferred that the judge not
speak directly to Jenkins again that day, the judge told
plaintiff's counsel to advise Jenkins of that fact, and warned

4

that she would not stand for a repetition of Jenkins' behavior.
The judge offered to advise Jenkins of the risk of dismissal
herself, but noted that she would have a marshal next to her as
she did it.  Counsel then met with Jenkins and returned to advise
the judge that he had warned Jenkins that if there was similar
behavior tomorrow "or if for some reason we didn't go forward"
then the court may dismiss the case.

After Jenkins failed to timely appear the next day, Judge
Failla granted the defendants' motion to dismiss the case, and on
December 11, 2015, issued an Order explaining that decision.  The
Order stated that

> Plaintiff had an outburst during his direct
> testimony that necessitated the immediate excusal
> of the jury, and, when that outburst escalated in
> intensity, the presence and intervention of
> multiple Court Security Officers and Deputy
> Marshals with the United States Marshals Service.
> Ultimately, Plaintiff's conduct required that the
> jurors be dismissed and trial be adjourned for the
> day.

The Order, however, dismissed the case because Jenkins was late in
arriving to court both on the second and third days of the trial,
and therefore held that he failed to prosecute his case.  Judge
Failla also granted the motion by plaintiff's counsel to withdraw.

In February 2016, Jenkins, now pro se, moved for
reconsideration of the dismissal under Rule 60, Fed. R. Civ. P.
On May 16, 2016, Judge Failla granted Jenkins's motion to

reinstate his case, on the basis that Jenkins' tardiness was not
sufficient grounds for dismissal, particularly in light of
difficulties with his parole curfew and the breakdown in the
relationship between Jenkins and his counsel.  In the exercise of
her discretion, Judge Failla decided to recuse because the
courtroom outburst was directed, in part, at her.  She advised
Jenkins, however, to think about whether he actually wished to
proceed with a second trial, given her observation that the trial
was so stressful for him.  The case was reassigned to the
Honorable Vernon S. Broderick on May 17, 2016.

New counsel, recruited by this Court's chief counsel for its
pro se office, appeared for Jenkins on August 29, 2016.  A
conference was held before Judge Broderick on August 30, 2016,
with Jenkins and new counsel present.  As plaintiff's new attorney
was explaining her request to amend the pleadings to add parole
officials as defendants, Jenkins interrupted to complain about the
way his counsel was presenting the argument.  After a recess was
taken to give Jenkins and his counsel the opportunity to consult
with each other, counsel attempted to resume her argument, only to
be interrupted yet again by Jenkins.  When the Court attempted to
intervene, Jenkins said

> That's how my trial ended on this document right
> here.  I'm not afraid to say conspiracy.  I know
> there's a conspiracy and I know it's racism and

```
that's all it was.  Katherine Polk was being racist
when she told me I didn't know Federal Rules.
```

When Judge Broderick told Jenkins to stop, Jenkins responded, "Judge, don't do that, man.  It's all racism."  Jenkins then complained about the attorney who represented him at the parole proceedings.  When Judge Broderick attempted to continue the colloquy with plaintiff's counsel regarding the request to amend, Jenkins interrupted again to complain about the racism he had experienced and was still experiencing in his life.  The Court attempted to intervene, but the proceedings did not get back on track.  Jenkins and his attorney argued with each other; Judge Broderick allowed Jenkins to explain what had happened in connection with his most recent arrest; and Jenkins spoke at length about various matters.  Judge Broderick finally invited plaintiff's counsel to bring a motion to amend.  A further recitation of the details of the conference is unnecessary; suffice it to say that, as reflected in the transcript, because of Jenkins' constant interruptions and accusations, the conference could not proceed as expected and presented significant management challenges.

Judge Broderick denied the motion to amend to add parole officials as defendants on April 27, 2017.  On July 24, 2017, Judge Broderick set a December 2017 trial date.  On November 1,

2017, in response to the parties' joint request, the trial was
adjourned to January 29, 2018.  Judge Broderick then transferred
the action on November 28, 2017 to this Court.

This Court promptly advised the parties that the trial would
proceed as scheduled on January 29, and set a pretrial conference
for December 15, 2017.  The plaintiff did not appear on time for
the conference, so it was begun without him.  Among other things,
plaintiff's counsel addressed what she described as "the mistrial
caused by my client's behavior."  She explained that Jenkins was
very smart, but came from a difficult background.  She referred to
Jenkins' "explosions" in court.  She represented that she had told
Jenkins "that if he so much as raises his voice in court" that she
would walk out.  The Court observed that there should be a fresh
start and that the plaintiff deserved a day in court on his claims
that his constitutional rights had been violated, but if he failed
to act respectfully "he may lose his right to attend the trial and
he may lose his right to proceed with his case."  Plaintiff's
counsel promised to inform Jenkins.  Among other items discussed
in anticipation of trial, the Court gave the parties notice that
it would revisit an issue decided by Judge Failla in her summary
judgment opinion, to wit, whether the plaintiff could obtain
damages from the police officer defendants for the time he spent
in parole custody.  A schedule was set for submissions on that

issue.

Towards the end of the conference, Jenkins was noticed in the
courtroom and the conference was moved from the robing room to the
courtroom so that he could participate.  During this part of the
conference, this Court addressed Jenkins as follows:

> And Mr. Jenkins, you have a very able attorney
> sitting beside you, and she raised with me at the
> conference in the robing room that it was the
> plaintiff's desire to start with a clean slate, and
> that's how I view this too.  I'm aware that there
> were outbursts in the courtroom before, I'm aware
> that this case was dismissed once before, and then
> reinstated.  My view is that everyone has a right
> for access to our federal court, that the
> Constitution and its Bill of Rights provides [sic]
> us all with such important protections and that
> anyone who thinks their rights under our
> Constitution have been violated has a right to come
> into this courthouse and present those claims, and
> indeed there's a statute, 1983, that says so and
> empowers people to seek damages for a violation of
> their rights.
>
> It's my hope that this trial in late January will
> give everyone the opportunity to litigate those
> issues before a jury that we will all pick
> together.  But, that said, I expect everyone in my
> courtroom to treat everyone with courtesy and
> respect, to follow any orders or instructions that
> I give.  There will be no outbursts.
>
> If you, Mr. Jenkins, are not able to follow my
> orders or if you engage in outbursts, I will decide
> what is appropriate in the circumstances.  I don't
> know what that will be.  I hope I don't have to
> think about it further.  But I could have you
> excluded from the courtroom, I could dismiss the
> case.
>
> That's not my goal.  My goal is to get your claims

> tried to a jury and get a verdict from a jury
> through a process that you think is fair and just
> and through a process that the defendants think is
> fair and just.  The jury is going to decide the
> fact issues here.  I'll decide the standard of law
> that will guide their deliberations.  But my goal
> is that we have a very smooth-running trial that
> gives everybody a chance to be heard and we get a
> jury to resolve this dispute.
>
> There will be a verdict of some sort, and if
> somebody's unhappy with the verdict, it can be
> appealed to a higher court.  So that's my goal, and
> I hope it's a shared goal by all of us.

During the conference, Jenkins and his counsel appeared to have a tense relationship.  Immediately after the conference, Jenkins's counsel moved to withdraw.  Counsel stated that "[t]he attorney-client relationship has been strained and most recently the attorney-client relationship has completely broken down beyond repair.  Additionally, Mr. Jenkins does not have confidence in my representation of his claims."  Counsel's motion was granted on December 19, 2017.  As a result, Jenkins proceeded pro se from that date forward.  The Court scheduled a final pretrial conference to help Jenkins prepare to conduct the trial pro se; to address whether the trial should start on January 29 or 30 to accommodate Jenkins' January 29 criminal court appearance on another matter; to rule on recently filed motions in limine; to finalize the witness list; and to answer any questions the parties might have.

10

The conference was held on January 12, 2018.  The transcript
of that conference speaks for itself.  The Court began by giving
Jenkins three pieces of advice to assist him in presenting his
case.[1]  The Court then reviewed the claims one by one that would be
tried, and described the damages that were claimed for each of
those violations.  In doing so, the Court noted that it had not
yet decided whether the damages could include compensation for the
time spent in parole custody or not, but would advise the parties
of its decision before trial.  As the Court turned to the issue of
the witness list, the conference broke down.

As reflected in the transcript, Jenkins essentially hijacked
the proceedings.  He engaged in extensive speeches, insulting his
prior counsel and the judges of this Court.  He was
confrontational, adopted an increasingly angry tone, and kept
interrupting the Court when it attempted to intervene.
Eventually, Jenkins said "I am about to trip on out of here. . . .
I am ready to go because it is getting late.  We have been here
for hours talking about nothing really.  This is all you not fair.
I see right through you. Judge.  You are here to sabotage my
claim.  You are working against me."  He accused this Court of

---

[1] The Court described the distinctions between the roles of witness
and advocate and gave tips for how to manage those different
roles; advised Jenkins to prepare an outline to use during his
direct testimony; and talked about how his demeanor before the
jury would impact its assessment of his credibility.

11

racism and made an insulting remark based on the Court's gender.
At the end of the conference, this Court dismissed this case with
prejudice, for abuse of the court process, abuse of judicial
officers, outbursts in court, and attacks on integrity of the
court, among other reasons.  Jenkins was advised that he would
have a right to appeal that decision.

## DISCUSSION

Dismissal with prejudice is a "harsh remedy to be used only
in extreme situations."  Koehl, 740 F.3d at 862 (citation
omitted).  When a litigant is pro se, there is an even greater
degree of solicitude to be granted that litigant.  Id.
Nonetheless, "dismissal of a pro se litigant's action as a
sanction may . . . be appropriate 'so long as a warning has been
given that noncompliance can result in dismissal.'"  Id. (quoting
Valentine v. Museum of Modern Art, 29 F.3d 47, 49 (2d Cir. 1994)
(per curiam)).

> "[T]he liberal pro se practice of this court has
> [not] done away with the time honored notion that
> the law and the courts of the United States are
> important parts of American society worthy of
> respect.  Our liberal pro se practice is a shield
> against the technical requirements of a past age;
> it is not a sword with which to insult a trial
> judge."  Koehl, 740 F.3d at 863 (citation omitted).

Mere complaints that a judge is biased against a litigant,
without more, are not a basis for sanctions.  Id. at 863.  But the

12

"right to accuse a judge of bias (or of misconduct) does not carry with it the right to abuse and insult." Id. Thus, in Koehl, "abusive language, insults, and attacks on the [Judge's] character, fitness for his judicial responsibilities, and religion" were all deemed to be sanctionable misconduct. Id. at 862.

Here, Jenkins has attacked the character of three judicial officers of this Court, in addition to engaging in numerous other attacks of the types listed above. He has interrupted proceedings with outbursts and accusations, most of which have the thinnest of connections to the matters at hand. He has engaged in long diatribes that interfere in the orderly conduct of proceedings. He has been warned at least twice that inappropriate behavior in a courtroom could result in his case being dismissed. Nonetheless, he has repeatedly found himself unable to behave in a manner consistent with the decorum required in a courtroom, particularly the decorum necessary for the trial of disputed issues of fact before a jury.

The Court has considered whether any lesser sanction would suffice, and has concluded that it would not. Given the track record here of misbehavior and misconduct, the Court simply has no basis to believe that any further warning or other sanction would cure the problem. It would abuse a second venire to proceed

13

further with any effort to conduct a trial of these claims.

Therefore, Jenkins's case must be dismissed with prejudice.

At the trial of this action, Judge Failla said to Jenkins:

> I will tell you this, sir, from the bottom of my
> heart, I don't care who wins.  I don't.  It doesn't
> matter to me. . . .  I care that this trial
> proceeds in accordance with the rules of evidence,
> which are not always things that are intuitive and
> are not always things that people appreciate.  But
> I'm not going to have you yell at me in court, sir.
> That's not the way this works.

This Court echoes that sentiment: it would have far preferred to

have a second trial proceed, in a manner fair to both sides.

Regrettably, Jenkins's behavior precludes that result.

## CONCLUSION

The case is dismissed, with prejudice.  The Clerk of Court is

directed to enter judgment for the defendants and close this case.

The Clerk of Court is requested to mail a copy of this Opinion and

Order and the Judgment to the plaintiff, and to note mailing on

the docket.

SO ORDERED:

Dated:   New York, New York
         January 30, 2018

_____
DENISE COTE
United States District Judge